[No. 664.  August —, 1897.]

## THE CERRILLOS COAL RAILROAD COMPANY, Plaintiff in Error, v. JOSEPHINE DESERANT, ADMINISTRATRIX OF HENRI DESERANT, Defendant in Error.

NEGLIGENCE—EVIDENCE—WAIVER.—In an action for damages, by the
administratrix of a deceased person, against defendant for negli-
gence, in causing the intestate's death in its mine, as the result of
an explosion in the vicinity of the room where intestate was work-
ing, of the danger of which intestate had been apprised by the pres-
ence of a danger signal placed there by defendant's fire boss, and
accepted employment,—Held: That defendant was not guilty of
negligence of which plaintiff's intestate could complain, having ac-
cepted employment with an implied waiver as to there being stand-
ing gases in places in defendant's mine.  If injury resulted from
a fellow servant's act under such circumstances, it must be consid-
ered to have arisen from the risk incident to the employment.

ID.—INSTRUCTIONS.—Where two theories were advanced by plaintiff and
defendant, respectively, as to the cause of the explosion, and it was
not clear upon which theory the jury found defendant liable, the
court erred in not clearly drawing their attention to the law ap-
plicable to both theories.

ID.—INSTRUCTIONS.—Instructions, the general import of which, relat-
ing to the duty of defendant, was not that reasonable diligence and
care should be exercised by defendant in an endeavor to perform its
duty, but that the duty must be performed or defendant be deemed
guilty of "culpable negligence," were erroneous.

Id.—Instructions.—In such case, where no attack was made upon the system or plan of ventilation, it was misleading and error to instruct the jury that it was incumbent on defendant to use necessary and suitable machinery for forcing a sufficient quantity of pure air into the mine.

Id.—Instructions.—An instruction that it was incumbent on defendant to keep open all air courses, etc., in said mine for the proper circulation of the air while the men were at work, and provide a sufficient amount of pure air for the safe and proper ventilation of the mine, for the protection of the men so working, was faulty in implying that defendant guaranteed these things.

Id.—Instructions—Measure of Damages.—It was error to instruct the jury that a nominal plaintiff could recover for loss of comforts and protection.

Id.—Measure of Damages.—In statutory actions for injuries causing death the rule is that the damages recoverable is compensation for the pecuniary loss to the parties entitled to recover; and if there are any aggravating circumstances attending the wrongful act or neglect of duty for which the defendant is responsible, then exemplary damages may be added.

*Error* from a judgment for plaintiff, to the First Judicial District Court, Santa Fe County. Reversed and remanded, with directions.

The facts are stated in the opinion of the court.

Henry L. Waldo and R. E. Twitchell for plaintiff in error.

The instructions given by the court do not in any wise state the law as to proximate cause. C. N. O. & T. P. R'y Co. v. Mealer, 50 Fed. Rep. 725; Scheffer v. R'y Co., 105 U. S. 249.

When an injury may have come from either one of two causes, either of which may have been the sole proximate cause, it devolves upon plaintiff to prove by a preponderance of the evidence that the cause for which the defendant was liable was culpable and the proximate cause. 25 Am. and Eng. R. R. Cas., 358. See, also, Scheffer v. R'y Co., supra; R. R. Co. v. Kellogg, 94 U. S. 469; Bish. on Non-Contract Law, secs. 41-48; R. R. Co. v. Flint, 18 Am. and Eng. R. R. Cas., 263;

Seale v. R. R. Co., 65 Tex. 274; Washington v. R. R. Co., 10 Am. and Eng. R. R. Cas., 749; Carter v. Towne, 98 Mass., 96 Am. Dec. 882; Cuff, Admx. v. R. R. Co., 35 N. J. Law 30.

There was error in the court's instruction that the jury might find exemplary or punitory damages as a punishment. Cleghorn v. R. R. Co., 56 N. Y. 44; R'y Co. v. Prentice, 147 U. S. 101; Hagan v. R. R., 3 R. I. 88-91; 1 Sedg. on Dam. [8 Ed.], sec. 380.

The words "exemplary" and "punitory" have a distinctive legal meaning. R. R. Co. v. Liddell, 2 S. E. 855, sub-head 5.

The court erred in instructing the jury that, in considering the question of damages, they might take into consideration the loss of comforts and protection to plaintiff, etc., as might seem proper under the circumstances. C. & P. R. R. Co. v. Rowan, 66 Pa. St. 393; Donaldson v. R. R. Co., 10 Ia. 280; Telfer v. R. R. Co., 30 N. J. Law 198; Chicago v. Morris, 26 Ill. 400; R'y Co. v. Shannon, 43 Id. 346; R'y Co. v. Sweet, 45 Id. 204; Conant v. Griffin, 48 Id. 412; Chicago v. Sholton, 75 Id. 468; R. R. Co. v. Robinson, 44 Pa. St. 178; R. R. Co. v. Butler, 57 Id. 338; R. R. Co. v. Polk, 24 Ga. 366; R. R. Co. v. Barron, 5 Wall. 93; Moffat v. Tenney, 30 Pac. Rep. 348.

NEILL B. FIELD and F. W. CLANCY for defendant in error.

Where duties are imposed in furtherance of the public policy of the state, any violation of such duties from which injury results is negligence per se. Tied. on Lim. Pol. Power, sec. 98; 1 Thom., Neg. 558; Carroll v. R. R. Co., 38 Ia. 122; Reynolds v. Hindman, 34 Id. 146; R. R. Co. v. Stinger, 78 Pa. St. 225; Messenger v. Pate 42 Ia. 445; R. R. Co. v. McDonald, 152 U. S. 281; R. R. Co. v. Reesman, 60 Fed. Rep. 376.

That Flick and Kelly were fellow servants of deceased is wholly immaterial. R'y Co. v. Cummings, 106 U. S. 702; R. R. Co. v. Callaghan, 56 Fed. Rep. 993, 994; Lane v. Atlantic Works, 111 Mass. 136; Elmer v. Locke, 135 Id. 575;

Griffin v. R. R. Co., 148 Id. 143; Harriman v. R'y Co., 45 Ohio St. 31; Booth v. R. R. Co., 73 N. Y. 40; Cone v. R. R. Co., 81 Id. 206; Ransier v. R. R. Co., 32 Minn. 335.

The court could not lawfully have refused to instruct that the jury might give exemplary damages. R. R. Co. v. Barron, 5 Wall. 90, 91; R. R. Co. v. Rowan, 66 Pa. St. 399; Donaldson v. R. R. Co., 18 Ia. 283; McClain's Code, Iowa, sec. 3731; Telfer v. R. R. Co., 30 N. J. Law 199; R. R. Co. v. Polk, 24 Ga. 362; Kesler v. Smith, 66 N. C. 155, 156; R'y Co. v. Miller, 2 Colo. 464; Long v. Morrison, 14 Ind. 598; March v. Walker, 48 Tex. 372.

Exemplary and punitory damages are the same. Anderson, Law Dic. 306; Day v. Woodworth, 13 How. 371.

There is no error in the instructions of the court as to what the jury might consider in assessing the damages. Laws 1891, 101; Tilley v. R. R. Co., 24 N. Y. 475; Same v. Same, 29 Id. 285; R. R. Co. v. Kelly, 29 Md. 279; Ihl v. R. R. Co., 47 N. Y. 295; Ewen v. R'y Co., 38 Wis. 624; R. R. Co. v. Wightman, 29 Gratt. 443; R. R. Co. v. Goodman, 62 Pa. St. 339. See, also, R. R. Co. v. Barron, 5 Wall. 97; R'y Co. v. Needham, 52 Fed. Rep. 377, 378.

COLLIER, J.—For convenience the parties to this record will in this opinion be referred to as they appeared in the lower court, i. e. plaintiff in error will be called defendant and vice versa.

This is an action by the administratrix of Henri Deserant, deceased, against the Cerrillos Coal Railroad Company in which damages are claimed for negligence in causing death in its mine, called the White Ash Mine, on Wednesday, February 27, 1895, as a result of an explosion occurring about 10:45 o'clock in the forenoon.

The declaration charges the negligence in various ways conducing to bring about or cause said explosion, but the evidence will be at present considered only as it bears upon the theory which plaintiff's counsel have most insistently urged upon us.

This theory is that in room eight (8) of the fourth left entry of said mine defendant negligently permitted to accumulate, and to remain standing for at least forty-eight hours prior to the explosion, gas, in dangerous quantity and ratio to the surrounding air and explosion, in the presence of the ordinary naked lighted miner's cap lamp, and that the same was exploded by employees of the company, producing after damp, fatal to life, and causing the death of plaintiff's intestate in room 17 of said fourth left entry, the working place to which he had been sent by defendant.

It appears that by this explosion, all the employees, twenty-three in number, who were at the time in the fourth left entry (except those in what was called the plane) were killed, and therefore all evidence to show how the explosion occurred and where was its initial point is necessarily circumstantial.   The fire boss was an employee whose duty it was to inspect the working places and inform miners, like deceased, who work by contract, i. e. were paid according to the quantity of coal mined, of the condition as to safety of their working places; and he told, or as he expresses it, he must have told the deceased, that his working place was safe when he went to work at 7 o'clock on the morning of the explosion.   As to this duty the fire boss must be considered, we think, beyond question as representing the defendant.   Thus it is expressly held in Cullen v. Norton, 52 Hun. 9, that a foreman intrusted with the performance of work stands in the place of and represents the master in assigning the servant to his place of labor, and in Northern Pac. R. R. Co. v. Herbert, 116 U. S. 642, it is held that, "if no one is appointed by a railway company to look after the condition of its cars, and see that the machinery and appliances used to move and to stop them are kept in repair and good working order, it is liable for the injuries caused thereby.   If one is appointed by it charged with that duty and the injuries result from his negligence in its performance the company is liable.   He is so far as that duty is concerned the representative of the company."

*Margin note: NEGLIGENCE: evidence: waiver.*

The fire boss had, in his round of inspection two days before the explosion, discovered standing gas in said room 8, how much does not appear, which caused him to place therein a danger signal, being what is known as the fire boss's danger mark, a double X or XX with date and initial letters of his name.   It is shown that such a signal was well understood by all employees to be an imperative command forbidding entrance with a naked light into any room or place where danger was thus indicated.   The fire boss did not go again into room 8 until after the explosion, nor is there anything to show that any effort was made to clear this room of standing gas, which by means of the safety or davy lamp he had detected there, notwithstanding that room 8 was considered the worst room in the mine for generating gas. It does not appear in precisely what place in room 8 the danger signal was placed, the fire boss merely saying it was "above the last cross-cut."   After the explosion there were found in this room the corpses of two miners, Kelly and Flick, that of Kelly in the cross-cut and that of Flick in the center of the track about the end, that is half way up between the cross-cut and the face of the room, about forty-five feet from the cross-cut.   A tie with fire danger mark on it was found lying across the track opposite the cross-cut. The track was partially taken up; there were implements there commonly used for such purposes, and there were there also two miners' caps and the lamps which carry a naked light, which indicated that Kelly and Flick had gone to room 8 to take up the track and had partially succeeded when the explosion occurred.   According to the plan of ventilation the air should, as to the rooms in the fourth left entry, have gone first to room 18 and by brattice or curtains been carried around its face, thence by cross-cut to room 17, carried around its face and so on to the rooms lower numbered in consecutive order, until arriving at the third left entry air course, being drawn through all air courses and entries by an exhaust fan at its exit from the mine.

It is agreed also between all witnesses that a gas explosion in a mine invariably flies against the air, and therefore if there

were an explosion in room 8, it would have flown towards room 17 where the body of plaintiff's intestate was found, if air were circulating, as the testimony shows, through the fourth left entry of said mine.    Defendant produced a considerable amount of evidence showing air circulation, and what was produced by plaintiff tended to show at most only a partial obstruction of the fourth left air course, diminishing but not destroying the current, the effect of which will be considered in another place in this opinion.    We may assume, therefore, that there was undoubtedly some air current, because this seems necessary for plaintiff's theory of the effect of the explosion being carried back to room 17, and, further, because there is nothing tending to show the entire absence of an air current going in the direction intended.

The rule adopted in the White Ash Mine of the fire boss making rounds of inspection, and advising miners as they went to work of the condition of their places as to safety, and the fact that all employees well understood that danger signals were used in the mine to prevent entrance into particular places or rooms, presupposed that deceased and his co-employees knew that work was or might be carried on without cessation, though there might be standing gas in places or rooms of the mine, and that they understood, when informed that their working places were safe, that such representation did not mean there was no standing gas in the mine or in any particular entry of the mine.    It can hardly be denied that, if the fire boss on the morning of Deserant going to work in room 17, had expressly told him there was standing gas in room 8, but it was marked with a danger signal, and Deserant had nevertheless gone in his place to work, the presence of such gas could not be urged as negligence by defendant causing his death, unless it were also shown that the room was not danger marked.    If the evidence shows that he impliedly agreed to such a condition the same conclusion should follow. In Sullivan v. India Mfg. Co., 113 Mass. 396, Devens, J., states the rule to be that "where the servant assents to occupy the place prepared for him and incur the danger to which he

will be exposed thereby, having sufficient intelligence and knowledge to enable him to comprehend them, it is not a question whether such place might with reasonable care and by a reasonable expense have been made safe. His assent has dispensed with the performance on the part of the master to make it so. Having consented to serve in the way and manner in which the business was conducted, he has no ground of complaint even if reasonable precautions have been neglected." If in the case at bar "the business was conducted" by placing a danger signal where there was standing gas, and it will not do to say the defendant should in addition have placed a man on duty to watch and warn against entrance with naked light, because it might be thought as a reasonable precaution such was demanded. In Naylor v. R'y Co., 11 N. W. (Mich.), it is held that "if a servant, knowing the hazard of his employment as the business was conducted, is injured, while employed in such business, he can not maintain an action against the master for such injury, because he may show there is a safer mode in which the business might have been conducted, and that had it been conducted in that way he would not have been injured." To the same effect also is Hewett v. R'y Co., 34 N. W. (Mich.) 659. In Sheets v. R'y Co., 39 N. E. (Ind.) 154, it was ruled, that "where the foot of deceased was caught in an unblocked switch, and he is run upon and killed by the careless act of the engineer in kicking cars with great and unnecessary force, the railway company was not liable because it was the act of fellow servant, and the fact of the frog being unblocked does not change the rule, as that was a danger known to the deceased, making the accident a risk incident to the service." Before that the Indiana supreme court held to the same effect in R'y Co. v. Henderson, 33 N. E. 1021, where the defect, known to the plaintiff and defendant alike, was in the roadbed. The two cases just cited show defects which it was the plain duty of the master to have remedied, but knowledge and an appreciation of danger by plaintiffs were held to defeat their action.

It is not suggested anywhere in argument that Deserant did not thoroughly realize that, if an explosion occurred from standing gas in the vicinity of his working place, his life would be endangered.   He was a man fifty-three years of age, was a miner by occupation and had worked formerly in the White Ash Mine, and, again, for seven weeks immediately prior to his death.   It can scarcely be thought that, if he supposed that the danger signals were negligently or willfully disregarded his life would not be jeopardized by explosive gas.

To similar effect of the cases above cited are those of Ladd v. R. R. Co., 119 Mass. 412; Hayden v. R'y Co., 29 Conn. 548; Goltz v. R'y Co., 44 N. W. (Wis.) 752, and Holey v. Lumber Co., 51 N. W. (Wis.) 321.   Our supreme court has also held, that the "rule of law perfectly well settled" is as follows:    "If the servant, before he enters the service, knows, or afterwards discovers, or if, by the exercise of ordinary observation or reasonable skill and diligence in his department of service, he may discover that the building, premises, machine, appliance, or fellow servant, in connection with which, or with whom he is to labor, is unsafe or unfit in any particular, and if, notwithstanding, such knowledge, he voluntarily enters into or continues in the employment without objection or complaint, he is deemed to assume the risk of the danger thus known or discoverable, and to waive any claim for damages against the master in case it shall result in injury to him." Alexander v. Mining Co., 3 N. M. (Gild.) 255.

In the case of B. & O. R'y Co. v. Baugh, 149 U. S. 368, it is said that "where the master has performed his duty in providing his servant with a reasonably safe place at which to work, he is not liable to any one of his servants for the acts or negligence of any mere fellow servant or co-employee of such servant where the fellow servant or co-employee does not sustain a representative relation to the master."   Again in the Baugh case it is said, "if the act of one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master, but if it be not one in the discharge of such positive duty, then there

should be some personal wrong on the part of the employer before he is held liable therefor."

If the doctrine laid down by the Massachusetts supreme court in the Sullivan case, supra, is correct, and the defendant had complied with its positive duty to the satisfaction of plaintiff's intestate, there was certainly no personal wrong done by it, and then if explosion came from ignition by the naked lamp of Flick or Kelly entering room 8, that was the act of negligence of the co-employee.

In the Herbert case, supra, the court approved the decision in Beeson v. Green Mountain Gold Mining Co., 57 Cal. 20, as being in harmony with its own views, where the injury ensued from the defective pipe put in by a tinner, which defective pipe caused a fire and death of plaintiff's intestate, holding that for such a pipe the master was responsible, but the decision expressly states that "it did not appear that the deceased knew, or had reason to know, of the defect." In Washington, etc., R. R. Co. v. McDade, 135 U. S. 554, it is held that employers "are bound to use all reasonable care and prudence for the safety of those in their service by providing them with machinery reasonably safe and suitable for the use of the latter. If the employer or master fails in this duty of precaution and care, he is responsible for any injury which may happen through a defect of machinery, which was, or ought to have been, known to him and was unknown to the employee or servant. But if the employee knew the defect in the machinery from which the injury happened and yet remained in the service without giving any notice thereof to the employer, he must be deemed to have assumed the risk of all danger reasonably to be apprehended from such use and is entitled to no recovery." In Kane v. Northern, etc., R'y, 128 U. S. 91, Harlan, J., says: "It is undoubtedly the law that an employee is guilty of contributory negligence, which will defeat his right of recovery for injuries sustained in the course of his employment, when such injuries substantially resulted from dangers so obvious and threatening that a reasonable, prudent man, under similar circumstances would have avoided

them if in his power to do so." The horns of a dilemma seem here presented to plaintiff. If standing gas in this mine was an obvious danger, the deceased was guilty of contributory negligence; if it was not in fact an obvious danger, it was only because deceased relied upon observance by his co-employees of the rule forbidding entrance into a room where a danger signal was posted. There is nothing to indicate in any way that there was any danger from this standing gas, if it were not ignited by going into its presence with a naked light, and if this were provided against in a way known to deceased, the existence of standing gas can not, we think, be considered as making his place unsafe, or, if unsafe, only in such a way as he assented to. In Hough v. Railway Co., 100 U. S. 224, it is said that "if the engineer, after discovering or recognizing the defective condition of the cow-catcher or pilot, had continued to use the engine, without giving notice thereof to the proper officers of the company, he would undoubtedly have been guilty of such contributory negligence as to bar a recovery, so far as such defect was found to have been the efficient cause of the death." It would be strange if it could be argued that though an action by the engineer could not be maintained under such circumstances, yet the fireman, having similar knowledge and continuing without complaint to ride on the engine used by the engineer, could recover. In Dist. Columbia v. McEligott, 117 U. S. 621, it was held in effect, that if the jury deemed it reckless carelessness in a laborer to work near a dangerous bank for any length of time, however brief, then he could not recover, though injured while waiting the fulfillment of the master's promise to send assistance so as to guard him against apprehended injury.

There is no lack of recognition by us of the well established doctrine, that where there is combined negligence of an employer and fellow servant the master is liable for injury inflicted in the course of employment, but the cases we have referred to show, even if we concede failure of duty in this case on the part of the mine owner, that if such failure is known

and acquiesced in without complaint, and is the efficient proximate cause of injury, the servant is precluded from recovery. All these cases we have cited are in entire accord with Cumming v. Grand Trunk R'y Co., 106 U. S. 700, which states the general principle of liability of the master where he contributes to the injury, as this case speaks in no way of knowledge of defects or failure of duty of employer had by the injured servant; and, as far as our investigation has gone, none of the cases following this principle deny the effect of knowledge by the employee killed or injured.

If Flick and Kelly were fellow servants of deceased, and it was by their act or negligence, in disobedience of the imperative command given by the danger signal, that death ensued, it seems clear no recovery can be had upon the theory of explosion originating in room 8. In this we have assumed, that deceased agreed to work in the White Ash Mine with rooms containing dangerous gas, merely guarded by a fire mark or danger signal. At least, there was evidence altogether sufficient for the court to have explicitly instructed the jury on this question and it wholly omitted to do so; but we will discuss the court's instructions further on.

While there are many decisions from which it might be strongly argued that the standing gas in room 8 could not be considered the proximate cause of the death of the plaintiff's intestate, because the act of Flick and Kelly was an intervening act of such character as to break the chain of causation, and because it was not probable or reasonable to expect, with the safeguards employed to prevent entrance into a room where there was standing gas, that an explosion and consequent death would occur, yet upon the principle rigidly stated in the Cumming case, supra, it seems to the writer at least, that these decisions, among which are those of Shaeffer v. Railway Co., 105 U. S. 249, and R. R. Co. v. Kellogg, 94 U. S. 469, and the argument upon which they proceed, do not apply. It is preferred, therefore, to place our conclusion upon the ground that the master in this case is not shown to be guilty of negligence of which plaintiff's intestate can com-

plain, as he accepted or at least there is evidence tending to show that he accepted, employment with an implied waiver as to there being standing gas in places in said mine, provided they were guarded by a danger signal. If injury resulted from a fellow servant's act or negligence under such circumstances, such injury must be considered to have arisen from the risk incident to the employment.

That Flick and Kelly were fellow servants of the deceased, they being "company men" employed in assisting in the getting out of coal without actually drilling holes or doing any blasting with powder, as deceased was engaged in doing, we hold to be clear, and without discussing the question so much gone over, we again cite the Baugh case, supra, and also that of the N. P. R. R. Co. v. Charless, 162 U. S. 359. We will close the discussion on this branch of the case by quoting from the case of Bern v. Gaston Coal Co., 27 W. Va. 285, as follows: "If therefore it appears that the proprietors of the mine had been negligent in permitting fire damp to accumulate in their mine, which would not produce any injury until ignited, and if it were ignited by a fellow servant who went into the dangerous part of the mine with a lighted lamp contrary to the orders of the proprietors of the mine, and by such lighted lamp the fire damp was ignited and exploded by which the servants were injured, such explosion and injury would be directly and immediately caused by the act of the fellow servant and not by the negligence of the master, and the master would not be responsible for such injury."

The other theory advanced as to the explosion is, that it was not simply a gas explosion but was a gas and powder explosion, originating in one of the rooms in the fourth left entry where work in getting out coal was going on, these rooms running from 12 to 18 inclusive, and that it was caused by what is known as a "gunning or windy shot." This kind of shot was described as being caused by an insufficiency of powder to break the coal or from insufficient or careless tamping. In either event there would issue from the hole drilled into the coal a sheet of flame, extending in some instances a

distance of 60 or 70 feet. This flame it was testified, would ignite dust, impregnating the air and cause explosion where the gas only amounted to one and a half to two per cent, so small as not to explode in the presence of naked lights carried on the caps of the miners. These gunning or windy shots are shown to "occur occasionally but are not a regular occurrence." This theory was sought to be maintained by the defense. In the brief of its counsel it is urged that a windy or gunning shot is evidence of negligence by fellow servants, and that if an explosion so occurred the defendant should be held exempt from liability. In the first place it is not at all clearly shown that such a shot is evidence of negligence, and even if it were, we do not think that under the Cumming case, supra, such would necessarily excuse the defendant from liability.

These shots were not so rare as to be improbable, and there was testimony pro and con as to the quality of the air. If the jury believe from a preponderance of the evidence that the air was bad and made so by partial obstruction of the air course and that such obstruction was negligence of the defendant which resulted in the accumulation of gas of sufficiently large percentage to be exploded by a gunning shot, and they further believed that defendant should have reasonably anticipated such accumulation from this cause, the fact that gunning shots evidenced contributory negligence by fellow servants would not prevent the returning of a verdict against the defendant. It appears in evidence that the presence of this gas is not perceptible to the senses, and that it is insidious and not an obvious danger. The jury might believe, under proper instructions, that deceased would not be guilty of contributory negligence in continuing at work until an explosion resulted from a gunning shot, or that the mere presence of bad air, if there was bad air, was a sufficient warning to him to retire to safety, as it is in testimony, that frequently the air would be better and worse in the mine.

If however the jury should believe that defendant caused to circulate through the mine the statutory quantity of air and

that an explosion nevertheless occurred, whether from a gunning shot or by ignition from naked lights, because of an accumulation of gas casually occurring, then defendant should not be held liable, as to hold otherwise would be to make defendant a guarantor of safety in the working places, when instead an explosion from an accumulation of gas so casually occurring is to be considered a risk incident to the employment in which deceased was engaged.

We are unable to say upon which theory the jury found defendant liable in this case, but the court was in error in not INSTRUCTIONS. clearly drawing to their attention the law applicable to each theory.

These instructions were error also in other respects. Their general import as to everything relating to the duty of the defendant was not that reasonable diligence and care should be exercised by defendant in an endeavor to perform its duty, but that the duty must be performed or it be INSTRUCTIONS. deemed guilty of "culpable negligence." We so understand instruction 7 and if it was intended to lesson its severity by No. 8, the language is not explicit enough to effectuate that intention. Thus in No. 7 the court instructs that it was incumbent on defendant to employ fit, suitable, competent and experienced men to operate and manage the mine; while in the Baugh case, supra, we find the following language:   "If the master has taken all reasonable precautions to inquire into the competency of one proposing to enter his service, and as a result of such reasonable inquiry is satisfied that the employee is fit and competent, can it be said that the master has neglected anything, that he has omitted any personal duty; and this notwithstanding that after the servant has been employed it shall be disclosed that he was incompetent and unfit? No human inquiry, no possible precaution, is sufficient to absolutely determine whether a party under certain exigencies will or will not do a negligent act.   *   *   *   Therefore, that a servant proves to be unfit and incompetent, or that in any given exigency he is guilty of a negligent act resulting in injury to a fellow servant does

not in itself prove any omission of care on the part of the master in his employment."

The portion of the instructions of the learned judge, that it was incumbent on defendant to employ and use proper, necessary and suitable machinery and appliances for forcing a sufficient and necessary quantity of pure air into the said White Ash Mine, etc., etc., should not have been given, as no attack whatever was made upon the system or plan of ventilation, and this was calculated to mislead the jury and draw their minds away from the questions at issue.

INSTRUCTIONS.

The instruction that it was "incumbent on the defendant to keep open all air courses, slopes, cross-cuts, entries and cross-entries in said mine for the proper, necessary, free and unmolested circulation of the air in said mine while the men were working therein, and to provide an adequate amount of pure air for the safe and proper ventilation of said mine for the protection, safety, comfort and convenience of the men so working in said mine at the time and immediately prior to the time of the alleged explosion, and at the time of the death of plaintiff's intestate" is also objected to.    This is faulty in that it strongly implies that the defendant guaranteed all these things.    It is conceded that it is the positive duty of the master to make the place of work reasonably safe, but again quoting from the Baugh case we find that this "positive duty does not go to the extent of a guarantee of safety, but it does require that reasonable precautions be taken to secure safety."  The including also of all the things mentioned in the instructions, such as keeping open all air courses, slopes, cross-cuts, entries and cross-entries," and providing for "comfort" and "convenience," etc., has the effect of carrying into the case questions tending to confuse the jury and to make them hunt about for faults committed by the defendant having no bearing upon or connection with the questions involved at the trial.    All this may have been done upon the theory that the act of congress, embodied in the instructions required such strict performance by the defendant

INSTRUCTIONS.

as to make nonperformance not merely evidence of neg-
ligence, but negligence per se.   In the first place, if it might
even be held that this showed negligence per se, there was no
evidence going to show that any slope, cross-cut, entry or cross-
entry was not open, or that the comfort or convenience of any
miner was impaired, but there was evidence to show one air
course partially obstructed.    To the ignition theory in room 8
this part of the instructions could have no reference under the
view we have taken of this case.

The act of congress, passed March 3, 1891, provides, that
managers or owners of coal mines shall provide adequate
ventilation of not less than so many cubic feet of air per
minute for so many men and by proper appliances force same
through the mine to the face of each working place so as to
dilute and render harmless noxious and poisonous gases and to
keep all working places clear of standing gas.    It has been
laid down in a recent work of high authority, that a breach of
statutory duty is negligence per se.    3 Elliott, Ev., sec. 1155.
Such, however, does not seem to be the view of the United
States supreme court.    That court speaking by Mr. Justice La-
mar, in the case of Grand Trunk, etc., v. Ives, 144 U. S. 408,
where the question related to the violation of an ordinance pro-
hibiting the running of trains greater than the named speed,
after noticing the conflict in authority on such questions, says:
"Perhaps the better or more generally accepted rule is, that
such an act on the part of the railroad company is always to
be considered by the jury as a circumstance from which neg-
ligence may be inferred in determining whether the company
was or was not guilty of negligence."    Breaches of statute or
ordinance were similarly treated in the cases of Randall v.
Baltimore, etc., Railroad Co., 109 U. S. 485; Hay v. Michigan
Central, etc., 111 U. S. 228, and U. P. R. R. Co. v. McDon-
nell, 152 U. S. 282.    Where the means to be adopted for
securing requisite ventilation were not prescribed, but congress
contented itself with general directions, it should be held that
reasonable effort is to be exerted to attain and maintain this

result.   If this result were neither attained nor maintained
it would then be the jury's province to say whether under all
the circumstances this failure was or not due to negligence by
the defendant.

Instruction 9 should not have been given, as it is not
considered that such an instruction had any possible applica-
tion to this case, except as to violation by Flick and Kelly of
the rule against entering places marked with danger signals,
and we have already indicated what the court should have
done in that regard.   All the instructions must be changed
from 7 down to 14, inclusive, on the lines we have indicated,
as it is unnecessary to further specially advert to them.

It is our view, that upon the record as it comes before us,
the court should have clearly and in a distinguishing way sub-
mitted to the jury the theories of explosion originating in room
8, and of its originating elsewhere in the fourth left entry of
the mine.   The instructions should have told the jury, in
effect, as to the explosion originating in room 8 that if they
believed it there originated, and that deceased consented to
work in said mine with places dangerous because of standing
gas, guarded by danger signals, and knew, or had good reasons
to know, that the business of the mine was conducted in this
way, and should further believe that the standing gas was
exploded in such room by the miners Flick and Kelly or
either of them; then such explosion was by act or negligence
of the fellow servants of the deceased, and for plaintiff to
recover it must be shown to the jury by a preponderance of
the evidence that the said room was not danger marked by
defendant at the time Flick and Kelly entered the same with
naked lights.   The court should have submitted the other
theory, upon the proposition of defendant negligently or not
permitting gas to be generated and remain in and around the
working places in the mine, upon the lines we have laid down.

The court should have further instructed the jury that, if
it were not shown by a preponderance of the evidence where
or in what way the explosion originated, one of the ways

exempting from liability and the other not, a verdict should be returned for defendant.

We do not intend by this opinion to prescribe any form of instructions, but rather to indicate the general line upon which they should proceed.

Only one other question is it deemed necessary for this opinion to refer to, and that is upon the measure of damages. The personal representative of the deceased is merely the nominal or statutory plaintiff in this action. Thus it appears that she will be a distributee along with her five children, of whatever may be finally recovered in this action, while as to the two cases consolidated with this upon the trial she has no pecuniary interest in the result. Yet as administratrix of her husband and each of her two sons, all killed at the same time in said fourth left entry, she is the plaintiff in each case. It is plain that the court should not have instructed that a nominal plaintiff could recover for loss of comforts and protection. It may be that this language is merely inaccurate and does no harm, if the rule of damages is otherwise correctly stated.

INSTRUCTIONS: measure of damages.

The rule in statutory actions for injuries causing death is, as shown by abundance of authority, that the damages recoverable is compensation for the pecuniary loss to the parties entitled to recovery. Chicago v. Norris, 26 Ill. 400; Conant v. Griffin, 48 Ill. 412; Railroad Co. v. Butler, 57 Pa. St. 338; Telfer v. R. R. Co., 30 N. J. L. 199; Brady v. Chicago, 4 Biss. 451; R. R. Co. v. Polk, 24 Ga. 366; Moffatt v. Tenney, 30 Pac. Rep. 348.

MEASURE of damages.

It can not be readily seen how, arguing from the relations and obligations of one human being toward another, the life of any one can be of pecuniary value to another, except it be the life of a husband and father to his wife and children to whom he owes support and education. It must be considered, however, that as our statute gives a right of recovery to any one who is of kin in the same way that it gives it to the wife and children of deceased, merely prescribing who are prior distrib-

utees of what is recovered, the rules for estimating the loss in each case should be the same. Such a rule must be that from the proof as to age, earning capacity, health, habits and probable duration of life, the jury shall say what is the present worth of the life of deceased, with nothing to be added by way of consolation to the parties or party entitled as distributees to the proceeds of recovery, and nothing for suffering or anguish of mind or body by the deceased. It is resolved into a cold question of dollars, with sentiment in no way to be taken into account. Neither does the question of mitigating or aggravating circumstances have any weight so far as the damages denominated by our statute "compensatory" are concerned. If there should be a recovery full compensation should be awarded, mitigating or aggravating circumstances having effect only on the question of allowing or not allowing exemplary damages in addition to full compensation.

Our statute appears to mean, that if there are "aggravating circumstances attending the wrongful act, neglect or default" for which the defendant is responsible, then exemplary damages should be added to those which are merely compensatory. In the case of Lake Shore, etc., R'y Co. v. Prentice, 147 U. S. 101, Mr. Justice Gray goes into a very elaborate discussion of exemplary damages as relating to the liability of a corporation therefor, and from it we will deduce our conclusions, that being a court whose decisions should be held controlling with this court. The portion of that decision most applicable to this case is the affirmance of the case of M. & St. P. R'y v. Arms, 91 U. S. 495, in which an instruction that if the jury "find that the accident was caused by gross negligence of the defendant's servants controlling the train, you may give to the plaintiff punitive or exemplary damages" was held error. The court said, that whether that was called gross or ordinary negligence the jury could not give damages beyond the limit of compenation. "To give exemplary damages there must have been some willful misconduct, or that entire want of care which would raise the presumption of a conscious indifference of consequences." The words of our statute do not, we think,

change the rule thus announced, but circumstances of aggravation to bind the principal for the act of the agent must be as above stated, or where the principal participated in a bad intent.    The decision in the D. & R. G. R. R. v. Harris, 122 U. S. 610, was approved in holding the corporation liable for exemplary damages but this was because the corporation, by its governing officers, participated in and directed all that was done, the thing done being in pursuance of an unlawful purpose to forcibly take possession of the railway occupied by another company.    There bad intent by the corporation was proven.    There is nothing in this record that tends in the least to show bad intent on the part of the defendant, nor is there anything to show that a servant knowingly unfit was employed or retained, whose unfitness would, or did, expose its employees to danger, or anything from which an argument might have been advanced that defendant was so careless of the lives of his employees that a presumption of conscious indifference as to consequences arose, unless the obstruction of the fourth left air course may be thought to show it.    The defendant is shown to have resorted, as usual, to its inspections, and the air in the mine was never bad enough to be a warning to the employees to desist from working, even if we disregard all testimony that it was not bad at all.    We scarcely think there was sufficient basis for any instruction as to exemplary damages, but if there should be produced sufficient evidence on a retrial, the court should inform the jury that exemplary damages may be added to compensatory damages, if it is shown by a preponderance of evidence that the defendant exhibited such entire want of care as showed a conscious indifference to consequences.    Mere neglect of a fellow servant, however gross, would not authorize exemplary damages, unless defendant, knowing his unfitness, employed or retained him, or in some way ratified his act.    If there is evidence on a retrial on this subject an instruction as to exemplary damages should be given.    At all events, the jury should be explicitly informed of the nature of exemplary damages, and their attention confined to a consideration of what in

the evidence, in the way of aggravating circumstances, may warrant their being given.

Wherefore it is considered that the refusal of the lower court to award a new trial was error, and a new trial should be granted; this case to be remanded, with directions to the lower court to grant the same.

Smith, C. J., Hamilton and Bantz, JJ., concurring.