**101 P.2d 382**

## DUNCAN v. MADRID et al.

### No. 4498.

Supreme Court of New Mexico.

April 12, 1940.

Kiker & Sanchez and Anthony J. Albert, all of Santa Fe, for appellants.

Gilbert & Hamilton, of Santa Fe, for appellee.

ZINN, Justice.

Plaintiff below (appellee here), as administratrix of the estate of her deceased husband, brought suit against the defendants (appellants here) for damages under the death by wrongful act statute. 1929 Comp.St., § 36-102. Death was the result of a rear-end collision when the car occu-

pied by the deceased and one Jenperrin struck the rear end of the parked truck of defendant Madrid, being operated by defendant Trujillo.

The complaint alleged specific acts of negligence which were denied by the answer. The defendants charged contributory negligence, which was likewise denied by the reply. The case was tried to the court, which found for the plaintiff and awarded judgment for $7,500, from which this appeal is prosecuted.

The trial court's findings of fact material to a determination of the legal issues presented here, and which findings of fact are supported by substantial evidence and therefore not to be disturbed on appeal, are as follows:

That on the evening of October 11, 1935, after dark, and more than one-half hour after the sun had set, the defendant, Porfirio Trujillo, while driving defendant Madrid's Ford truck upon the highway known as U. S. Highway 64—285, between Espanola and Velarde at the request of and upon the business of defendant Madrid, and while accompanied by defendant Madrid, parked the Ford truck and left the same standing wholly upon the oiled or main travelled portion of the highway at a point approximately ten miles north of Espanola. At the time of so parking the Ford truck it was not disabled in such a manner that it would be impracticable to park the same off the main travelled portion of said highway. At the time and place the truck was parked it was entirely without lights burning either in the front or the rear thereof, and had no reflector in the rear thereof other than an unlighted tail-light. The defendants argue at length that the same is validly a reflector. This is immaterial in light of the result. The court found that no lighted flares were placed either in the front or to the rear of the truck.

The court found that at the point where the truck was parked the shoulders of the highway were level and of sufficient width to have safely permitted the driving of the truck completely off the oiled or main travelled portion of the highway and that the defendants had ample time prior to the accident to have done so, or to have put out flares or to have warned oncoming traffic of the existence of the truck on the highway, but that they made no effort to either move the truck or to put out flares or to warn oncoming traffic of the existence of the parked truck.

The court found that while the truck was so parked and left standing upon the highway that Duncan, accompanied by Jenperrin, while proceeding along the highway in a Hupmobile roadster, driven by Jenperrin in the same direction in which the truck had been travelling, collided with the rear end of the truck causing the injuries to Duncan from which he died.

As to the defendants' claim of contributory negligence, the court made findings of fact, likewise supported by substantial evidence and not to be disturbed, that at the time of the collision Jenperrin was operating the roadster in a careful and prudent

manner consistent with safety; that the roadster was equipped with good lights and brakes, but that by reason of the absence of lights upon the truck or flares in the front or rear thereof and the location and condition of the truck on the highway, that Jenperrin, although making every reasonable effort to do so, was unable to avoid colliding with the truck.

The court also found that at the time of the accident neither Duncan or Jenperrin were under the influence of intoxicating liquor and that the negligent acts and omissions on the part of the defendants were the proximate cause of the accident resulting in the death of Duncan, and that Duncan and Jenperrin were entirely free from contributory negligence in connection with the accident.

As to the question of damages the court found that at the time of the accident Duncan was a man forty-eight years of age, in good physical and mental health, capable of earning and earning from $150 to $200 per month with which he supported his wife and daughter and had a life expectancy of 22.36 years, and assessed the damages at $7,500.

The court concluded as a matter of law that the acts and omissions of the defendants were such as would not have been committed by a person of ordinary prudence and said acts constituted negligence on the part of the defendants, were violations of the safety statutes of the State of New Mexico, and constituted negligence per se and were the proximate cause of the collision which resulted in the death of Duncan. The court also concluded that Duncan and Jenperrin were entirely free of contributory negligence in connection with the collision, and that plaintiff had been damaged in the sum of $7,500.

Defendants assign as error thirty-six points which are grouped for disposition under three headings, as follows:

1. The defendants were free of negligence. 2. The decedent was guilty of negligence barring recovery. 3. Failure of proof as to damages, if any, entitling plaintiff to recover.

Under the first point the defendants claim that they did not park or leave their truck standing on the highway in violation of law. In this contention the defendants are mistaken.

It would burden this opinion without value to narrate all of the evidence which we find in the transcript in support of the court's findings. Such evidence as is essential to a discussion of the case will be touched upon. From the evidence it is sufficiently clear that the defendants did park the Ford truck, and left the same standing, wholly upon the oiled or main travelled portion of the highway at a point approximately ten miles north of Espanola, outside of a business or residence district, and that at the time of so parking the truck and leaving the same standing upon the oiled or main travelled portion of the highway it was practical to park the same off the main travelled portion of the highway and that at said time and place said truck

was not disabled in such manner and to such extent that it was impossible to avoid stopping and temporarily leaving such truck in such position. Defendants' conduct was clearly a violation of 1929 Comp. St., § 11-823. The fact that the truck was standing on the highway after dark, and more than one hour after sunset, without lights burning either in the front or rear constitutes a violation of 1929 Comp.St., § 11-847. Unquestionably there were no flares set out by the defendants as required by L.1935, Ch. 75.

The defendants' contention is that the failure of the lights, the stopping of the truck and the collision were so nearly instantaneous that they had neither time to put out flares or drive the truck off the main highway. Their contention is contrary to the findings and evidence..

It is true that some of the evidence supporting the court's findings are circumstantial. Nevertheless, the plaintiff's case presents not only the more probable hypothesis of what occurred at the time of the accident, but it is also more consistent with the theory of the plaintiff as to what actually occurred than with the defendants' theory of instantaneous occurrence and nonavoidable accident. The record shows that the lights on the truck went out and that the defendants, instead of driving off the road and fixing the lights, or putting out flares, as required by law, remained on the road where the collision occurred.

Defendant Trujillo testified that he was going to first examine the car to see if the failure of the lights was due to a fuse blowing out and, "if it wasn't I was going to drive the truck off the highway and find out." This clearly indicates that the truck could be driven off the highway and not left there as was done without lights or flares.

Defendants contend that subsection (c) of Sec. 11-823, 1929 Comp.St., makes the law inapplicable to them because it does not make the law applicable to the driver of a vehicle which is disabled in such a manner and to such an extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position. They argue that they were not "parking" on the highway. Under the defendants theory the phrase found in our statute, to-wit: "no person shall park or leave standing * * *" means only a voluntary stopping of a car on the highway and permitting it to remain there. We cannot agree with such construction. We believe that by the use of the phrase "* * * or leave standing * * *" the Legislature intended to make illegal any stopping *and* leaving of a vehicle on the highway for any length of time, unless, of course, as stated in the statute, the conditions be such that the car cannot be moved off the highway. In the instant case the car could have been moved off the highway, as Trujillo testified and the court found.

Our statute is not applicable merely to such cars as are voluntarily parked on the highway, but also operates upon such cars as are stopped because of some disability but which disability does not prevent

the car from being moved off the highway, as in the instant case.

A discussion of the following authorities cited by the defendants to support their view, to-wit, Dare v. Boss et al., 111 Or. 190, 224 P. 646; Kastler v. Tures, 191 Wis. 120, 210 N.W. 415; and, Martin v. Oregon Stages, 129 Or. 435, 277 P. 291, and others cited in brief, would not be helpful. We are construing our own statute. Subsection (c) of Sec. 11-823, supra, excepts only such cars as, because of accident or mechanical defects, it is impracticable to move off the highway.

We come now to the second assignment of error, namely, the question of contributory negligence.

It will be unnecessary to dispose of the plaintiff's contention that the defendants did not properly plead contributory negligence in view of our disposition of the defendants' contentions. Nor will it be necessary to dispose of the defendants' claim of error that the court refused to find that Duncan is chargeable with the conduct of his driver Jenperrin. If Jenperrin was not negligent in driving the car, the question becomes unimportant. If not, the court was correct in refusing so to find.

Comp.St.1929, Sec. 11-804, as amended by L.1933, Ch. 118, Sec. 1, subdivision (b), provides as follows: "Maximum Speed. No bus or truck shall be operated at a speed greater than 45 miles per hour. Passenger automobiles may be operated at such speeds as shall be consistent at all times with safety and the proper use of the roads."

Defendants contend that Jenperrin ought to have driven the car at such a rate of speed as to have been able to stop it within the length of his vision, and that failing in that, the conduct of Jenperrin constituted negligence per se, which negligence was chargeable to Duncan. That may be correct as an abstract statement of the law. The defendants, however, are faced with an entirely different proposition. The trial court found that the decedent and Jenperrin were entirely free of contributory negligence. The matter of the contributory negligence of either Jenperrin or Duncan was a question of fact to be determined by a jury or by the court in the absence of a jury as in this case. This is the rule in New Mexico, and too well settled to require citation of authority.

In the case at bar we cannot say as a matter of law that the driver Jenperrin did not exercise such care as a person of ordinary prudence would under the same or similar circumstances. In view of the circumstances surrounding the accident the question of contributory negligence in this case could not be other than a question for the jury, or for the court in the absence of a jury.

Viewing the situation, as we presume the trial court viewed it, from Jenperrin's own testimony, we find that Jenperrin saw an approaching car with bright headlights approximately one-half mile away. He dimmed his lights but the approaching car failed to dim. He turned his bright lights on immediately upon passing the car, and for the first time saw the unlighted

truck on the highway approximately twenty-five or thirty feet from him. He put on his brakes and turned to the left but was unable to avoid the collision. This summarizes briefly what transpired. We refuse to say that under the circumstances Jenperrin did not act as any ordinarily prudent man would have acted under the circumstances. He saw the lights of the approaching car for approximately one-half mile and probably could have seen a red taillight on the truck for the same distance if there had been any taillight burning on the truck. There is no evidence that at the time of the accident, or prior thereto, Jenperrin was violating any statutory standard of conduct. The defendants' contention is that when the lights of the approaching car shone in Jenperrin's eyes he should have stopped. Reasonable men could very easily differ upon the question. Jenperrin was not bound to anticipate that the defendants would leave their car parked at night on the highway without lights or flares. Although he ought to assume that there would be other traffic on the highway north of Espanola, he also had the right to believe that those using the highway would obey the law and not leave trucks parked at a point where travel is to proceed. Whether under the circumstances he ought or ought not to have stopped his car is a debatable question, and one for the fact-finder to decide.

The recent case of Alt v. Krebs, 161 Or. 256, 88 P.2d 804, 805, is somewhat similar to the case at bar. The defendant's car stalled on the highway close to the right hand edge of the pavement, due to engine trouble. A little later the plaintiff who was driving in the same direction rounded a curve a short distance to the west of where the car was standing and collided with the rear of defendant's car. There was evidence that the taillight on the defendant's car was not burning and the principle ground of negligence was that the defendant parked her automobile upon the main travelled portion of the highway after dark without a rear light. The plaintiff testified that after she rounded the curve and came into a straightaway immediately before the accident, she was blinded by the headlights of an oncoming car. The defendant asserted that the plaintiff's own testimony convicted her of contributory negligence as a matter of law because it showed that she was driving an automobile on a public highway for approximately seven hundred fifty feet at twenty-five miles per hour while blinded by the headlights of an approaching car. The Oregon court said:

"The court is not warranted in declaring that in failing to stop the plaintiff was guilty of negligence as a matter of law. We think it was for the jury to decide whether her conduct in checking her speed and pulling over to the side of the road was or was not that of a reasonably prudent person under the circumstances. Murphy v. Hawthorne, 117 Or. 319, 244 P. 79, 44 A.L.R. 1397; Schassen v. Columbia Gorge Motor Coach System, 126 Or. 363, 270 P. 530.

"Counsel for the defendant have called our attention to a number of cases from other jurisdictions in which it is held that the failure of a motorist to stop his auto-

mobile immediately under circumstances similar to those disclosed by the evidence in this case constitutes negligence as a matter of law. Like decisions were cited in the Murphy and Schassen cases, but this court refused to follow them. In the Schassen case it was said: 'We decline to follow the cases which lay down the rule that a driver blinded by the lights of an approaching or stationary car must immediately stop his car. We think the better rule to be that each case must depend on its own state of fact, and as a rule the question of contributory negligence must be submitted to the jury under appropriate instructions.' 126 Or. page 369, 270 P. page 532.

"The plaintiff was not bound to anticipate that the defendant would negligently leave her automobile standing on the main traveled portion of the highway after dark without lights. While she was bound to assume that there might be other traffic on the highway, she also had the right to proceed in the belief that other motorists would exercise ordinary care. She was not deprived of all vision by the glare of the oncoming lights, but could see a distance of twenty-five feet; and, assuming her testimony to be true, as we must, the question of her negligence was one, not of law, but of fact, to be passed on by the jury.

"It is further argued that the plaintiff was negligent because, under her own testimony, she was unable to stop her car and so avoid a collision with the defendant's car after she saw it thirty feet ahead of her; that this evidence manifests that she was driving at an excessive rate of speed under the circumstances, was not keeping a proper lookout, and did not have her automobile under control. But this is only another way of saying that it is negligence as a matter of law to drive an automobile at such a rate of speed that it cannot be stopped within range of the driver's vision—a doctrine definitely rejected by this court in Murphy v. Hawthorne, supra."

We hold that the question of contributory negligence is a question for the jury, or as in this case where the jury is waived, it is a question for the trial court. Padilla v. Railway Co., 16 N.M. 576, 120 P. 724; Russell v. Davis, 38 N.M. 533, 37 P.2d 536; Mayfield v. Crowdus, 38 N.M. 471, 35 P.2d 291; Crespin v. Albuquerque Gas & Electric Co., 39 N.M. 473, 50 P.2d 259.

In view of the trial court's findings it is not for this court to say that Jenperrin was not operating his car "* * * at such speeds as shall be consistent at all times with safety and the proper use of the roads." Sec. 11-804, as amended, supra.

We recently said in the case of Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214, 219: " 'There is no rule of law requiring one lawfully using a public highway to be constantly looking and listening to ascertain if an automobile is approaching, under the penalty, on failure to do so, of being guilty of contributory negligence.' Kaufman v. Sickman et al., 116 Wash. 672, 200 P. 481." If that be true, then surely there is no rule of law requiring one lawfully using the highway after sunset to be constantly looking for trucks, which, without lights or

flares, may be stalled on the highway under the penalty, on failure to do so, of being guilty of negligence per se in the event of a collision.

In the case of Greenfield v. Bruskas, 41 N.M. 346, 68 P.2d 921, this court clearly recognized the rule that the driver of an automobile has the right to assume that others using the highways will obey the law.

Coming now to point three. The defendants contend that the award of $7,500 damages is not supported by the evidence. However, we find no error in the award of damages.

The evidence shows that at the time of the death of Duncan, he was an educated man, forty-eight years of age, in good health and able to work and support his family; that for a period of eighteen years prior to coming to New Mexico he had worked as stock foreman for the Liberty Steel Company of Cleveland, Ohio, at a salary of two hundred dollars per month; that he had been in New Mexico about a year and a half during which time he had operated a filling station and grocery store at Tesuque, New Mexico, and that from the income derived from this filling station and grocery store he had supported his family, which consisted of his wife, one daughter and himself; that the decedent had a life expectancy of 22.36 years. Upon this testimony the court could arrive at the damage occasioned by his death.

Counsel for defendants have cited a number of cases from other jurisdictions. We have no quarrel with the methods of computing damages adopted by other courts. We have considered this precise question a number of times and the decisions of this court fully dispose of the question involved here.

The first case in which the question was raised was the case of Cerrillos C. R. Co. v. Deserant, 9 N.M. 49, 49 P. 807, 813. In that case we said: "* * * that, from the proof as to age, earning capacity, health, habits, and probable duration of life, the jury shall say what is the present worth of the life of the deceased, * * *."

The holding in that case has been approved and reaffirmed several times since by this court.

The case of Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, 543, was an action for the wrongful death of a practicing physician, who was shown to have been at the time of his death an able and well educated physician, thirty years of age, who had a lucrative practice. There was no evidence of pecuniary damage to the father and mother of the deceased, they being the ones shown by the evidence to be entitled to the distribution of the proceeds of any judgment obtained on account of the death of the deceased. From a judgment in the sum of fifteen thousand dollars an appeal was taken. We said: "The defendant strenuously urges that, since the court concluded that plaintiff had failed to prove any pecuniary damages to the father and mother of the deceased, they being the ones shown by the evidence to be entitled to the distri-

bution of the proceeds of any judgment obtained on account of the death of the deceased, the court erred in rendering judgment for $15,000 against the defendant."

We then quoted extensively from the opinion of Mr. Justice Watson in the case of Valdez, Administrator v. Azar Bros., 33 N.M. 230, 264 P. 962. Although the Azar case went off on another point and the opinion prepared by Mr. Justice Watson was withdrawn, yet Mr. Justice Hudspeth in the Hogsett case quoted from the withdrawn opinion in the Azar case in part as follows: "'Appellee's intestate was eight years of age. Beneficiaries of the judgment are, under section 1823, Code of 1915, sisters and a brother, aged, respectively, fourteen, thirteen and six years. The evidence of pecuniary loss to these beneficiaries, if not wholly lacking, is very slight. This follows naturally from the ages and situation of the parties. Appellants contend that in the absence of actual proof of pecuniary loss only nominal damages are recoverable. They insist that where judgment is sought for the benefit of collateral kindred, no presumption of pecuniary loss may be indulged. They admit that to sustain their contention we must overrule Cerrillos C. R. Co. v. Deserant, 9 N.M. 49 (49 P. 807), but they urge that the rule there laid down is clearly wrong. In that case it was established as the measure of damages "that from the proof as to age, earning capacity, health, habits and probable duration of life, the jury shall say what is the present worth of the life of deceased." If this is the correct rule of damages, it is not

questioned that the evidence supports the judgment.'" Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, 543.

Mr. Justice Hudspeth in the Hogsett case quoted much from the withdrawn opinion in the Azar case, then said: "Defendant's able counsel have cited many cases from other jurisdictions interpreting statutes somewhat similar to ours which support their position. However, we do not feel justified in reversing the case of Cerrillos C. R. Co. v. Deserant, supra, for the reasons so clearly stated by Mr. Justice Watson. The evidence of the worth of the life of the deceased is substantial and the entry of judgment with the findings made meet the requirements of Comp.St.1929, § 105-813."

The case of Mares v. New Mexico Public Service Co., 42 N.M. 473, 82 P.2d 257, 270, is another very recent case before this court for damages for the wrongful death of a girl between thirteen and fourteen years of age. From a verdict of $12,000 an appeal was taken. We concluded that the judgment was excessive in the sum of forty-five hundred dollars and required a remittitur in that amount. Speaking through Mr. Justice Brice, we said in the Mares case:

"The worth of the life of deceased to her estate is not all that she would earn in her lifetime, but the present worth, taking into consideration the earning power of money.

"The leading authority on the question is Chesapeake & O. Ry. Co. v. Kelly, 241 U.S.

485, 36 S.Ct. 630, 631, 60 L.Ed. 1117, L.R.A. 1917F, 367, from which we quote:

" 'The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. * * * ' "

In the case at bar all of the elements as set out in the case of Cerrillos C. R. Co. v. Deserant, supra, are present, to-wit: Proof of age; Earning capacity; Health, habits and probable duration of life.

Upon the proofs submitted, the record shows that the court said in fixing the amount: "I might attempt a calculation as to the amount of damages (figuring). I will fix the amount of damages at $7500.-00." The court found in connection with the earning capacity of the deceased as follows: "That at the time of said accident the said J. Harper Duncan was a man 48 years of age, in good physical and mental health, capable of earning and earning from $150 to $200 per month with which he supported his wife and daughter."

We have laid down a number of rules for a correct method of arriving at damages in cases of this kind. One rule is found in the case of Johnson v. City of Santa Fe, 35 N. M. 77, 290 P. 793. The method of arriving at the proper amount of damages in that case was the cost of an annuity for plaintiff's decreased earning capacity. That case was a personal injury case. That method of arriving at the amount of damage was approved in the case of Mares v. N. M. Public Service Co., supra. We said:

"The basis of an annuity is not necessarily the legal rate of interest (Louisville & Nashville R. Co. v. Holloway, 246 U.S. 525, 38 S.Ct. 379, 62 L.Ed. 867) ; but the plaintiff was entitled to that amount of money which would compensate deceased's estate for the loss of her life. The discount rate should be based upon investments in safe securities, or upon the cost of an annuity."

Following that rule, what monthly income would be derived from a $7,500 annuity policy?

Interest compounded at three and one half per cent upon a principal amount of $7,500 for a man forty-eight years of age with a life expectancy the same as in this case would provide a monthly income of $38.30 per month. Upon the evidence of age, earning capacity, health, habits and probable duration of life of the deceased in this case the sum of $38.30 per month could hardly be considered excessive.

In the case of Mares v. New Mexico Public Service Co., supra, one method suggested by us in arriving at the monthly income was to measure the award by the life expectancy. Adopting that method in this case, that is dividing the amount of the judgment, by the life expectancy approximately 268 months, the monthly income produced from that amount would be approximately $28 per month. Not an excessive award to a wife and daughter for the loss of a husband and father. Although the fact that the deceased earned $200 a month for a period of eighteen years immediately prior to coming to New Mexico is not de-

terminative of his present earning capacity, nevertheless, the fact that a person was capable of earning $200 a month and is at the present time out of employment by reason of economic conditions is something which the court may take into consideration in properly arriving at the award of damages to be allowed to his widow and daughter for his wrongful death.

We hold that the trial court did not err in the method employed by it in awarding judgment or in the amount.

For the reasons given the judgment will be affirmed.

It is so ordered.

BICKLEY, C. J., and BRICE, SADLER, and MABRY, JJ., concur.