272 P.2d 688

**STATE v. SALAZAR.**

No. 5742.

Supreme Court of New Mexico.

June 7, 1954.

Rehearing Denied July 15, 1954.

Harry L. Bigbee, Donnan Stephenson, Santa Fe, for appellant.

Richard F. Rowley, Clovis, for plaintiff-appellee by designation of the Supreme Court.

SEYMOUR, Justice.

Defendant, Orlando Salazar, appeals from verdict of a jury finding him guilty of manslaughter on two counts and from the judgment and sentence of the court imposing imprisonment of not less than five nor more than six years.

In the vicinity of El Guache, two boys, Antonio Valdez, aged ten, and LeRoy Garcia, aged twelve, were riding a single bicycle on the highway. They were struck and killed by the automobile driven by defendant.

The information was in two counts:

"Count One—That on the 25th day of May, 1953, in the County of Rio

Arriba, State of New Mexico, the said Defendant did commit the crime of involuntary manslaughter, contrary to Section 41–2407, New Mexico Statutes 1941 Annotated, in that he did unlawfully kill one LeRoy Garcia."

The second count was identical except that it related to Antonio Valdez.

Pursuant to motion for bill of particulars, the particular acts charged by the state were that defendant "was driving said motor vehicle upon a public highway on the left hand side of the road when the same was not clear and unobstructed for fifty yards ahead, and at a speed in excess of the maximum speed limit permitted, established by law for the speed of motor vehicles on the highway where the said * * * was killed."

Defendant has preserved for review, and presented and argued in his brief, sixteen points. Many of these points raise serious and interesting questions of law. This Court will treat only those necessary to dispose of the instant case and such others as will necessarily arise in the event of a new trial.

Appellant's Point II is stated as follows:

"The court in its instructions injected the false issues for the consideration of the jury, and refused to give requested instructions which would have clarified these errors."

Section 41–2407, N.M.S.A. 1941 reads as follows:

" 'Manslaughter' defined—Voluntary and involuntary.—Manslaughter is the unlawful killing of a human being without malice. It is of two kinds: 1st. Voluntary: Upon a sudden quarrel or in the heat of passion. 2nd. Involuntary: In the commission of an unlawful act not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection. (Laws 1907, ch. 36, § 2; Code 1915, § 1460; C.S. 1929, § 35–305.)"

We are not concerned with voluntary manslaughter. As to the charge of involuntary manslaughter, at the commencement of trial pursuant to a motion to quash the information and with the consent of the state, the court stated into the record:

" * * * that the prosecution in this Cause depends for a conviction in this case on the violation of statute as to involuntary manslaughter while in the commission of an unlawful act not amounting to a felony."

It was on this theory, therefore, that the trial was had, and presumably it was on this theory that the defendant was convicted.

Appellant's Point II predicates error on the court's instructions numbered 6, 7 and 8, the defects of which were clearly pointed out to the trial court by timely and specific objections addressed to the instructions given.

The relevant portions of instructions 6, 7 and 8 are as follows:

"6. 'Involuntary manslaughter' is the unlawful killing of a human being without malice in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner or without due caution and circumspection.

"7. To find the Defendant guilty of involuntary manslaughter in this cause, you must find from the testimony, to your satisfaction and beyond a reasonable doubt, that his conduct not only was of a kind the result of which is described as constituting involuntary manslaughter by the definition heretofore given to you, but you must also find, to your satisfaction and beyond a reasonable doubt that such conduct was the proximate and efficient cause of the death involved in this cause.

\* \* \* \* \* \*

"8. That mere fact that an unfortunate and fatal accident has happened in which the Defendant was involved, if the Defendant did, in fact, participate in the accident, considered alone does not prove, and does not support an inference that the Defendant's conduct was without due caution and circumspection. It is incumbent upon you, in determining whether or not the Defendant exercised due caution and circumspection, to consider the facts immediately preceding, and all of the facts surrounding the occurrence in question, and not be moved to a conclusion solely by the fact of an unfortunate result."

By the court's statement at the commencement of trial, quoted above, the issue of manslaughter by the "commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection" was removed from the case. While instruction 6 is a proper definition of the crime of involuntary manslaughter, it specifically includes this issue which had been removed from the case. Instruction 6 might be defended as a proper definition if this reinjection of a false issue into the case were properly limited and safeguarded against by other instructions. On the contrary, instruction 7 admonishes the jury that in order to find the defendant guilty, it must find from the testimony that defendant's conduct was of the kind described by the definition given in instruction 6. The average person

would assume from instruction 7, and logically so, that the jury could find the defendant guilty if it believed beyond a reasonable doubt that these boys were killed "in the commission of a lawful act which might produce death in an unlawful manner or without due caution and circumspection."

Finally instruction 8, without any reference to an "unlawful" act, emphasizes the test of "due caution and circumspection" with regard to defendant's conduct.

Substantially, appellee concedes in discussing instructions 6, 7 and 8 that instruction 8 was unnecessary; the state's principal answer to this point is to the effect that error, if any, was harmless and did not prejudice the defendant. Appellee states, " * * * it is entirely reasonable to assume that the jury did not consider from the wording of the instruction itself that it was necessary that they should find the act to have been committed without due caution and circumspection in order to find the defendant guilty * * *."

It is our conclusion that these three instructions, read together as they necessarily must be, are erroneous and that they were prejudicial to the defense. The rationale of the state's position with regard to these instructions is deemed untenable under the decision in State v. Seward, 1942, 46 N.M. 84, 121 P.2d 145, 146, where it is stated:

"The court instructed the jury that it could find the appellant guilty because he was intoxicated *or* because he failed to possess the driver's license. This was a double barreled charge. Neither this court nor the trial court can say with certainty whether the jury found the appellant guilty because he was driving the car while under the influence of liquor or because he did not possess the license. If the latter be the basis of the verdict, then the appellant is being sent to the penitentiary wrongfully. This court cannot permit that."

The introduction of extraneous matter which may mislead the jury or divert its mind from a consideration of the evidence pertinent to the real issues tends to mislead the jury into the belief that these other issues are before it and may cause it to bring in an improper verdict. In such cases, the instructions are erroneous and, we believe, prejudicial. See also, Zanolini v. Ferguson-Steere Motor Co., 1954, 58 N.M. 96, 265 P.2d 983; Cerrillos Coal R. Co. v. Deserant, 1897, 9 N.M. 49, 49 P. 807. While our conclusion on this point requires a reversal, there is another point raised which probably will be involved in any subsequent trial.

Appellant's Point XII reads as follows:

"The court should either have allowed appellant additional challenges or granted a severance, as requested by appellant."

Appellant, after exercising five peremptory challenges, sought to challenge an additional juror on the basis that there were two separate felonies charged, and two separate offenses against two separate individuals. The request was denied; further, appellant's motion to require the state to elect under which count it would proceed, was denied.

■ Under § 42–638, 1941 Comp.; State v. Brewer, 1952, 56 N.M. 226, 242 P. 2d 996; State v. Compton, 1953, 57 N.M. 227, 257 P.2d 915; and Commonwealth v. Peronace, 1937, 328 Pa. 86, 195 A. 57, we are satisfied that the trial court was not in error in denying defendant the additional peremptory challenges sought, and further, that such denial did not require the granting of a severance by the trial court or necessitate an election by the state.

The judgment of the trial court is reversed and the defendant granted a new trial.

It is so ordered.

McGHEE, C. J., and COMPTON and LUJAN, JJ., concur.

SADLER, J., absent from the state, did not participate.

On Motion for Rehearing

SEYMOUR, Justice.

The motion for rehearing of defendant-appellant is denied.

A refusal of this Court to pass upon certain of appellant's contentions other than those treated in the original opinion shall not be deemed a ruling on such issues, nor shall our silence thereon make available to either party any contention that the law of the case as to such issues is established.

McGHEE, C. J., and COMPTON and LUJAN, JJ., concur.

SADLER, J., not participating.