419 P.2d 234

**J. R. VARNEY, Administrator of the Estate of Jackie Raymond Varney, Deceased, Plaintiff-Appellee and Cross-Appellant,**

**v.**

**Dennis Leo TAYLOR and Arrow Gas Service Company, Defendants-Appellants and Cross-Appellees.**

**No. 7704.**

Supreme Court of New Mexico.

May 2, 1966.

Rehearing Denied Oct. 24, 1966.

James L. Brown, Farmington, for appellee.

White & Musgrove, Farmington, for Dennis Leo Taylor.

Botts, Botts & Mauney, Gerald R. Cole, Albuquerque, for Arrow Gas Service Co.

NOBLE, Justice.

This action for the wrongful death of J. R. Varney arose from a head-on collision between a pickup truck driven by decedent and a butane truck owned by Arrow Gas Company and driven by Dennis Leo Taylor. Arrow Gas and Taylor have appealed from an award of $37,886.00 by the court sitting without a jury. Varney's administrator has cross-appealed.

Appellants attack findings 4 and 7 which in effect found the defendants negligent, and an absence of contributory negligence on the part of Varney. The appeal turns on whether the findings are substantially supported by the evidence. In determining whether the evidence is substantial in support of a finding, we must view it in the light most favorable to the successful party and disregard all contrary evidence and inferences. Thompson v. Getman, 74 N.M. 1, 389 P.2d 854; Scott v. Transwestern Tankers, Inc., 73 N.M. 219, 387 P.2d 327; Grisham v. Nelms, 71 N.M. 37, 376 P.2d 1. A reviewing court will not weigh conflicting evidence but will examine it only to determine whether it substantially supports the findings. Minor v. Homestake-Sapin Partners Mine, 69 N.M. 72, 364 P.2d 134. The trial court's findings will not be disturbed on appeal unless not supported by any substantial evidence and reasonable inferences growing therefrom, or unless reasonable minds cannot differ concerning a contrary result. Moore v. Armstrong, 67 N.M. 350, 355 P.2d 284. See, also, Ashley v. Fearn, 64 N.M. 51, 323 P.2d 1093; Perini v. Perini, 64 N.M. 79, 324 P.2d 779; Hisaw v. Hendrix, 54 N.M. 119, 215 P.2d 598, 22 A.L.R.2d 285. It is equally well established that if more than one inference can be drawn from the established facts, the reviewing court cannot substitute its deductions for the conclusions of the trier of the facts. Adams v. Cox, 55 N.M. 444, 234 P.2d 1043.

The challenge that these findings lack substantial support in the evidence requires

us to determine, as a matter of law, whether the evidence, viewed in the light most favorable in support of the judgment, with all reasonable inferences therefrom, and disregarding all unfavorable evidence and inferences, substantially supports the facts found by the trial court upon which the judgment is based.

Taylor had delivered liquified gas to a well site and was driving the Arrow Gas truck in the single set of tracks in the middle of a 20-foot-wide graded dirt road at a speed of 40 miles per hour. Varney was approaching from the opposite direction in a pickup also apparently driving in the single set of tracks. No eye witness was able to testify to the exact position of the vehicles at the moment of impact and the truck driver said he did not know his exact location.

■ However, when asked to locate the two vehicles at the instant of impact, Taylor said he was driving in the tracks in the center of the road as he approached a crest over which he could not see until he reached the top. He said he saw the Varney pickup immediately in front of him as he reached the crest of the hill. When asked how much time elapsed between his first seeing the Varney vehicle and the collision, Taylor testified: "the only thing I had time to do was to swerve. I had no time to do anything more than just jerk at the steering wheel." The gas truck was seven feet, seven inches wide at the front fenders.

The two vehicles overlapped their left front fenders eighteen inches. Mr. Shingler fixed the location of the Varney pickup at the instant of impact by its engine lying on the ground on the Varney side of the centerline and approximately three and one-half or four feet from the Varney edge of the road. He thought the engine had dropped straight down to the ground upon being broken loose by the impact because there were no marks to indicate that it had rolled or skidded. He bought the engine as salvage and installed it in another vehicle. The oil pan, generator, manifold, carburetor, air cleaner and other parts attached to the outside of the motor were not damaged. These were facts from which, by reasonable inferences or deduction, the trial court could have determined that the gas truck was partly on the Varney side of the centerline and that Varney was on his own side of the road at the moment of the collision. We find nothing unreasonable in those inferences, and, accordingly, the findings complained of will not be disturbed. Cardenas v. Ortiz, 29 N.M. 633, 226 P. 418; Trigg v. Trigg, 37 N.M. 296, 22 P.2d 119; American Hospital and Life Insurance Co. v. Kunkel, 71 N.M. 164, 376 P.2d 956.

■ The appellants point to the testimony of the investigating state police officer and argue that his location of what he thought was a spot of water from the Varney pickup's radiator constitutes a physical

**32**

condition pointing so unerringly to the fact that the Varney pickup was on the wrong side of the road as to leave no room for a contrary conclusion. They argue that Ortega v. Koury, 55 N.M. 142, 227 P.2d 941 and Bolt v. Davis, 70 N.M. 449, 374 P.2d 648 require our determination that the court's findings lack substantial support. We cannot agree. They argue that because the waterspot was located in the center of the roadway, the collision must likewise have occurred at that point. The officer denied this by his testimony and said that in his opinion the point of impact was some three or more feet to the Varney side of the center. We think this is not the situation where surrounding facts and circumstances make the testimony of the witnesses who located the Varney pickup on its side of the centerline incredible or so inherently improbable as to be unworthy of belief.

The fact that there may have been contrary evidence which would have supported different findings or even that based upon the same evidence the court might reasonably have reached a contrary inference does not require a reversal for failure to adopt appellants' contrary requested findings, nor does it permit a reviewing court to weigh the evidence. State ex rel. Reynolds v. Lewis, 74 N.M. 442, 394 P.2d 593; Adams v. Cox, supra.

The precise question as to the proper measure of damages for wrongful death has not heretofore been presented to this court. The trial court based damages upon the present worth of the amount which the decedent might reasonably be expected to accumulate and leave as his estate had he lived to the end of his life expectancy, finding:

"Based upon the factors of his age, life expectancy, education, experience and demonstrated and probable future earning capacity the deceased could reasonably expect to accumulate in his life time an estate of a value of $150,000.00."

Applying the present-worth formula of such an estate based upon a three and one-half percent interest table, or .252572 percent of the expected accumulated estate, the court determined its present worth to be $37,886.00 and rendered judgment for that amount. Neither party is satisfied with the damages. Appellee attacks the amount of damages by cross-appeal urging that the correct yardstick is the present worth of the reasonably anticipated prospective earnings of the decedent whose life was wrongfully cut off.

Generally, the decisions of other courts, relied upon by appellants in support of the accumulated estate method of arriving at the damages resulting from such death, construed statutes providing an action for the benefit of the estate of the deceased and declaring that whatever is recovered becomes an asset of the estate. See annotation, 7 A.L.R. 1314. This court however,

considered and rejected those decisions in Duncan v. Madrid, 44 N.M. 249, 101 P.2d 382 where we said that our own decisions fully dispose of the question. Looking then to our decisions, we find that the territorial Supreme Court in Cerrillos Coal R. Co. v. Deserant, 9 N.M. 49, 49 P. 807 established as the measure of damages: "that from the proof as to age, earning capacity, health, habits and probable duration of life, the jury shall say what is the present worth of the life of deceased * * *." That rule, said to represent the majority view, was recognized and further explained in Mares v. New Mexico Public Service Co., 42 N.M. 473, 82 P.2d 257; See annotations 7 A.L.R. 1314, 26 A.L.R. 593, 77 A.L.R. 1439, 154 A.L.R. 796. There, concerned with the measure of damages for wrongful death, we acknowledged Chesapeake & O. Ry. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117, L.R.A.1917F 367, as a leading case and quoted the following with approval:

"* * * The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. * * *"

It is significant that almost every decision of this court since Mares has quoted the above statement of Chesapeake & O. Ry. v. Kelly, supra. Adopting the reasoning of the Kelly case, we recognized that an award based entirely upon aggregate future bene-

fits would amount to more than compensation unless the earning power of money was taken into account.

A further search of our decisions discloses that even though Duncan v. Madrid, supra, said this court has laid down a number of rules for a correct method of arriving at damages in wrongful death cases, the basis of the award has uniformly been the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased, measured by anticipated earnings. That base amount was then capitalized in various ways to arrive at its present cash value or present worth. Thus, it is apparent that Duncan, in speaking of the number of rules for arriving at damages, had in mind not the basic amount measured by anticipated earnings but the various means by which that amount was capitalized to arrive at its present worth. As examples, In Johnson v. City of Santa Fe, 35 N.M. 77, 290 P. 793, the cost of an annuity which would pay benefits equal to expected earnings over the period of life expectancy was used. Mares said that "[t]he discount rate should be based upon investments in safe securities, or upon the cost of an annuity." Duncan applied the interest return from safe securities method. See, also, Whitmer v. El Paso & S. W. Co., 201 F. 193 (5th Cir. 1912).

█ We are clear that under our statute a measure of damages based upon the accumulations the decedent would have

made for his estate and which considers earning power only to the extent that it bears on the probable amount of accumulations, would not be equivalent to compensation for deprivation of pecuniary benefits that would have been expected to result from the decedent's continued life. Certainly a wife and child might reasonably expect to be well supported, even to the extent of a husband and father's total earnings, notwithstanding there were no accumulations in the way of a pecuniary estate. In such circumstances, an award based upon expected accumulated savings must be relatively nominal, whereas the deprivation of the reasonable expectation of pecuniary benefits to his family would actually be the amount which could reasonably be expected to have been provided for them from the continued life of the deceased without regard to whether there were savings.

Our statute is completely unlike those of many states permitting next of kin to sue for wrongful death in their own right and name for damages to compensate such relative for loss of reasonably anticipated contributions to such relative. In this state, recovery never belongs to or becomes an asset of the estate. Baca v. Baca, 71 N.M. 468, 379 P.2d 765; Henkel v. Hood, 49 N.M. 45, 156 P.2d 790. The right of recovery in New Mexico is by the personal representative solely as an agency for the prosecution of the suit but recovery belongs to the rela-

tive for whose benefit the suit is brought, and the right of recovery extends to those distributees named in the statute, or to those entitled under the laws of descent and distribution, in the same manner and to the same extent as is given to the wife and children of the decedent. Cerrillos Coal R. Co. v. Deserant, supra; Whitmer v. El Paso & S. W. Co., supra; see, also, the quotation from the withdrawn portion of an opinion of Mr. Justice Watson in Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, 543. It follows, of course, that, other distributees being entitled to recovery to the same extent as a wife and children, accumulated earnings would seldom measure the pecuniary benefits that would have been expected from decedent's continued life.

A review of our decisions reveals that this court has not determined the extent to which the prospective earnings of the deceased are to be taken into account in assessing the damages for his death, and the courts of other states are not agreed upon the question. In a few jurisdictions, the gross earnings and the amount which the deceased might reasonably be expected to earn in the future is the basis for an assessment of the present worth of the life of the deceased. In others, the basis is the loss of decedent's net income during his probable life. Annotations 7 A.L.R. 1314; 26 A.L.R. 593.

We think net income is the more realistic basis for arriving at the equivalent

to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. That this is so is illustrated by the fact that certainly today an award based upon gross earnings, just as one which does not take the earning power of money into account, would amount to more than compensation. Without intending to state a rule as to what should be deducted from gross earnings to arrive at a net figure, but only as an example, we point out that almost all of those cases applying gross earnings were either before or soon after imposition of Federal and State income taxes and were, of course, prior to social security taxes. These are often substantial deductions from gross earnings and certainly are not a part of the decedent's income which his family could expect as direct pecuniary benefits. Another example which comes to mind is the fact that many sources of employment have compulsory retirement after which, in the usual instance, the expected income from other than invested capital may reasonably be expected to be materially reduced. There are, no doubt, other amounts which should reasonably be deducted from gross earnings to arrive at that figure which would properly amount to the equivalent of the loss of reasonably expected benefits that would have resulted from the continued life of the decedent.

It follows that the judgment should be affirmed in all respects except the amount of the award. The case will be remanded with directions to vacate the judgment and to enter a new judgment in appellee's favor for such amount as the court shall determine to be the present worth of decedent's life, computed in a manner consistent with this opinion.

It is so ordered.

CHAVEZ and COMPTON, JJ., concur.