Certiorari Granted, October 10, 2017, No. S-1-SC-36656

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-078**

**Filing Date: August 10, 2017**

**Docket No. A-1-CA-35769**

**KATHLEEN OAKEY, Personal Representative
of the ESTATE OF TAWANA LUCERO, Deceased,**

      **Plaintiff-Appellee,**

**v.**

**JOHN TYSON, M.D.,**

      **Defendant-Appellant,**

**and**

**DOCTOR ON CALL, LLC; DOCTOR ON CALL 2,
LLC; DOCTOR ON CALL 3, LLC; DOCTOR ON
CALL 4, LLC; DOCTOR ON CALL, P.C.; JOHN
VIGIL, M.D.; and MAY MAPLE PHARMACY, INC.,**

      **Defendants.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
C. Shannon Bacon, District Judge**

Fuqua Law & Policy, P.C.
Scott Fuqua
Santa Fe, NM

Fine Law Firm
Mark Fine
Albuquerque, NM

for Appellee

Atwood, Malone, Turner & Sabin, PA

Lee M. Rogers
Carla Neusch Williams
Roswell, NM

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Appellant

**OPINION**

**VANZI, Chief Judge.**

**{1}** This appeal arises from a lawsuit filed July 3, 2012, by "Lance Lucero, [as] Personal Representative of the Estate of Tawana Lucero, deceased," following Tawana's death on December 1, 2009, from an overdose of prescription medications. The complaint asserted claims against Doctor On Call, LLC and John Tyson, M.D., including negligence, medical malpractice, and wrongful death, based on allegations that Dr. Tyson had prescribed excessive amounts of dangerous medications to Tawana. Before he filed this suit (the civil action), Lance Lucero, Tawana's uncle, was appointed as personal representative of Tawana's probate estate in a separate case, *In re Estate of Tawana Lucero*, No. D-202-PB-2012-00031 (the probate case).

**{2}** Lance did not obtain a separate district court appointment in the civil action as personal representative under the Wrongful Death Act (WDA), NMSA 1978, §§ 41-2-1 to -4 (1882, as amended through 2001), which provides that damages actions for death resulting from wrongful conduct "shall be brought by and in the name of the personal representative of the deceased person[.]" Section 41-2-3. Neither the district judge presiding over the civil action (who also presides over the probate case) nor anyone else questioned or raised any objection concerning Lance's capacity or authority to file or prosecute the civil action.

**{3}** In the spring of 2013, Lance and Dr. Tyson entered into a settlement agreement, and the district court entered an agreed order dismissing all claims against Dr. Tyson with prejudice. Over two years later, on July 15, 2015, the court entered an order that stated, among other things, that Lance "was not appointed as the Personal Representative for the Wrongful Death Estate" and "removed" him as "Personal Representative of the Estate of Tawana Lucero, deceased," replacing him as personal representative in both the civil action and the probate case.

**{4}** A year after Lance was removed as personal representative, on July 26, 2016, the district court entered an order granting a motion filed by Kathleen Oakey (the newly appointed personal representative in the civil action) seeking to set aside the settlement and reinstate the claims against Dr. Tyson. That order was replaced and superseded by an order

2

entered August 16, 2016, which recited that the relief sought in Oakey's motion "was to set aside the district court's [o]rder of [d]ismissal with prejudice of all claims against Dr. John Tyson, M.D., dated May 13, 2013" and ordered reinstatement of the claims against Dr. Tyson. Dr. Tyson filed an application for interlocutory appeal, which we granted. We reverse.

## BACKGROUND

{5}     The complaint in the civil action identified the plaintiff as "Lance Lucero, [as] Personal Representative of the Estate of Tawana Lucero, deceased" and alleged that "[Lance] is the duly appointed Personal Representative of the Estate of [Tawana]." A subsequent amended complaint adding additional defendants (collectively, Defendants) and claims identified Lance in the same way and contained the same allegation concerning Lance's appointment as "Personal Representative of the Estate of Tawana." As we have noted, no one objected to Lance's capacity or authority to commence or prosecute this case.

{6}     After Lance entered into a settlement agreement with Dr. Tyson on or about April 4, 2013, the district court entered an agreed order on May 13, 2013, dismissing the claims against Dr. Tyson with prejudice (the dismissal order). Lance continued to litigate the civil action against the remaining Defendants for the next two years without any objection from anyone concerning Lance's capacity or authority to prosecute the case. On June 12, 2015, Teresa Lucero, Lance's sister, filed an emergency motion seeking to intervene and obtain relief based on allegations that Teresa is Tawana's "natural mother" and "the statutory beneficiary of the wrongful death proceeds" and that Lance and his attorney at the time, Joseph Camacho, failed to distribute to her any proceeds of the settlement with Dr. Tyson.[1] Teresa had known of Tawana's death since early December 2009 and learned of this lawsuit no later than December 10, 2014 (the date of Camacho's withdrawal as Lance's attorney), perhaps earlier.

{7}     Teresa's motion sought the following "immediate" relief: (1) an "accounting as to

---

[1]The record reflects the possibility that Teresa's maternal rights as to Tawana may have been terminated. Lance testified that they had been. Teresa could not recall. Barbara Wilton, Tawana's grandmother, testified that she was Tawana's court-ordered kinship guardian. The record also contains testimony that (1) Teresa said she did not want to be a WDA beneficiary and wanted Tawana's sister Veronica and/or Veronica's daughter to be the beneficiaries, (2) Lance believed that Veronica and her daughter were the WDA beneficiaries, and (3) the Tyson settlement money had been placed in a trust account and used only for the benefit of Veronica and her daughter. In staying discovery pending the outcome of this appeal, the district court ordered that the stay did not prevent discovery concerning, inter alia, whether Teresa is a WDA beneficiary. It thus appears that the court ordered relief to vindicate rights claimed by Teresa before ever establishing whether Teresa had any such rights.

3

whom the settlement money was paid and the whereabouts of the funds[,]" (2) payment to Teresa of any funds from Camacho's trust account controlled by the New Mexico Disciplinary Board, and (3) removal and replacement of Lance as personal representative in the wrongful death case (WDA PR) because of his failure "to insure the partial settlement proceeds were properly paid to Teresa." The motion also represented that Lance's "current counsel is requesting to be allowed to withdraw[2] and the court-appointed Personal Representative should select a new attorney with the consent of [Teresa]." The motion's request for the removal and replacement of Lance as WDA PR was not based on Lance's failure to obtain court appointment as WDA PR, separate from his prior court appointment as personal representative in the probate case (the probate PR). In other words, Teresa's motion did not contend that Lance lacked capacity or authority to commence or prosecute the civil action, or to enter into the settlement with Dr. Tyson.

{8}     Defendants (not including Dr. Tyson, who had been dismissed more than two years earlier) opposed Teresa's motion on the grounds that they did not want any further delay, a WDA beneficiary has no intervention right, and an accounting should be sought in the probate case, not the civil action.

{9}     The district court held a motion hearing on July 8, 2015, at which Teresa's counsel argued that Lance should be removed as WDA PR and replaced with "a neutral person" because Lance had not distributed money and, "due to his non-cooperation with various counsel," had not "pushed the case along after three years." The court observed that the file contained no indication that Lance "was ever appointed the personal representative for purposes of the [WDA]." When defense counsel advised that Lance "was appointed in a separate proceeding[,]" the court said that there was such an indication in the probate case but that "[a]ppointment of a personal representative in a probate proceeding does not legally appoint anyone as the PR for purposes of wrongful death. They're distinct appointments." The court said, "I'm not convinced that [Lance] is actually the PR in this case[.]"

{10}    As noted, neither the court nor anyone else had raised this issue or otherwise questioned or objected to Lance's capacity or authority to file or prosecute the civil action

---

[2]The number of attorneys representing the plaintiff in this case is staggering. Camacho represented Lance in this case and the probate case until he sought withdrawal in this case on December 10, 2014. Robert Cole entered his appearance as co-counsel on May 15, 2014, but moved to withdraw on December 19, 2014. Mario Medrano, Raynard Struck, and Michael Santistevan entered appearances on February 2, 2015. Three months later, on May 26, 2015, Arturo Nieto and Timothy Padilla substituted for Mario Medrano. Within a week, Nieto, Padilla, and Santistevan filed a motion for permissive withdrawal and filed another motion with the same request on June 30, 2015, which was granted on July 15, 2015. On August 14, 2015, Mark Fine entered his appearance, and some time the following year—perhaps around April 2016—Scott Fuqua was identified as also representing the plaintiff.

during the prior three years of litigation. Teresa's counsel stated that, although the duties of a probate PR and a WDA PR differ, Lance had acted with proper authority in the civil action based on his appointment as the probate PR, including in settling the claims against Tyson. He also stated that the simple remedy is entry of a stipulated order appointing the probate PR as WDA PR.

**{11}** The court subsequently stated that "we have a partial settlement with a party who is long departed from this case" and that "there is [no] unringing of that particular bell." But the issue of "undoing something like that" was not before the court. The court said it did not know "if there's going to be a question about legal capacity to enter that settlement" but that Dr. Tyson had been "dismissed with prejudice" and is "not a party to the case anymore." The court also observed that Teresa had standing in the probate case to seek "essentially everything" requested in her motion but that there was a question as to Teresa's standing in the civil action.

**{12}** On July 15, 2015, the court entered an order declaring that Lance was not appointed as WDA PR and had not filed an inventory or closed the probate case, and that Teresa is Tawana's mother and a proper probate PR. The court ordered (1) the removal of Lance "as Personal Representative of the Estate of Tawana Lucero, deceased"; (2) the appointment of Kathleen Oakey as WDA PR; (3) the appointment of Teresa as probate PR;[3] (4) the immediate payment by Lance of "all amounts collected on behalf of the statutory beneficiary" to Teresa's attorney, James Ellis, to be held "in his trust account on behalf of the Estate of Tawana Lucero"; (5) distribution to James Ellis of "[a]ny money held by the Disciplinary Board in which [Teresa] has an interest" to be held "in his trust account on behalf of the Estate of Tawana Lucero"; and (6) the notification of all banks in which Lance has accounts by James Ellis that such accounts must be immediately frozen pending an accounting and further court order.[4]

---

[3]Although the district court stated that it had jurisdiction over the probate case, it cited no legal authority for its decision to replace the probate PR, where no party requested removal, and no motion was made in the probate case. Nevertheless, and despite the court's instructions to Teresa's counsel to "draft the necessary letters of appointment" and Teresa's counsel's agreement to do so, it appears that two years later, Lance continues to be probate PR. *See In re Estate of Tawana Lucero*, No. D-202-PB-2012-0031.

[4]We note also that the district court did not explain the legal basis for apparently accepting, without documentation or conducting any hearing on the matter, that Teresa was the sole statutory beneficiary under the WDA and that all monies recovered from Lance and the Disciplinary Board should be disbursed to her. It is also unclear why the court ordered Ellis to recover these funds in light of the WDA's requirement that it is the personal representative bringing the wrongful death action who is charged with collecting damages and distributing them to the statutory beneficiaries. Section 41-2-3; *see also Leyba v. Whitley*, 1995-NMSC-066, ¶ 21, 120 N.M. 768, 907 P.2d 172 (noting that the personal

**{13}**     Six months later, on January 25, 2016, Oakey, now WDA PR (hereinafter, Plaintiff), filed a motion seeking to set aside the settlement with Dr. Tyson and to reinstate the claims against him. The motion stated that "Plaintiff takes no issue with the propriety of" Lance having acted as the probate PR, but argued that the Tyson settlement "is void ab initio" because Lance "fundamentally lacked the necessary statutory authority to pursue the claims presented by the litigation." The motion did not contest the amount of the settlement or manner in which it was negotiated. Although the motion asserted that undoing the settlement is "[t]he appropriate remedy" and that the court had authority to do so, it cited no authority supporting either contention. Instead, the motion faulted the insurer for paying the settlement and complained that it would be "fundamentally unfair" to allow Lance to "steal" Plaintiff's entitlement to pursue claims against Dr. Tyson as she saw fit. The motion did not address the fact that, by this time, Teresa had received at least some of the settlement monies. The motion also said nothing about the fact that the claims against Dr. Tyson were not limited to wrongful death but included claims for negligence and medical malpractice.

**{14}**     Dr. Tyson (who intervened for the limited purpose of responding to the motion), filed a response, as did the remaining Defendants in the case, who also filed a motion to dismiss. Because Plaintiff cited no law purportedly authorizing the relief sought in the motion, Dr. Tyson and Defendants were left to their own devices to determine what legal authority might possibly be construed as authorizing Plaintiff's requested relief. Among other things, Defendants argued that Plaintiff could not have it both ways: if the court concluded that the Tyson settlement was void because Lance lacked legal authority to enter into it, the court must dismiss the civil action in its entirety because a legally authorized plaintiff had not filed the case within the time required by the WDA, a statute of repose. Defendants also argued that Rule 1-060(B) NMRA was the only authority the court might have, but that none of Rule 1-060(B)'s provisions applied; the motion was untimely; and the requested relief would prejudice Dr. Tyson and Defendants. Defendants argued further that the dismissal order was not void because a probate administrator may serve as WDA PR, and that Plaintiff should be judicially estopped from arguing that the Tyson settlement was void because, inter alia, that position is necessarily inconsistent with a position that allowed Plaintiff to avoid dismissal under the statute of repose.

**{15}**     Dr. Tyson made similar arguments but emphasized, among other things, that, at the time of the settlement, New Mexico law did not require a probate PR to obtain an additional court appointment in order to serve as a WDA PR; no law authorizes "reinstatement" of a lawsuit that has been dismissed with prejudice; the contention that the correct WDA beneficiary had not been paid was an unproven allegation; the remedy for a technical failure concerning the appointment could be cured by ratification or appointment, and does not require a "do-over" of everything in the case; and Lance's alleged failure to distribute proceeds was not the result of failure to obtain a separate WDA PR appointment issue but

representative has a nondiscretionary duty to distribute the wrongful death proceeds in the ratio described by the WDA).

6

a distinct wrong to be remedied in a separate action against Lance or his attorney. In addition, Dr. Tyson argued that Plaintiff's motion was not the proper procedural vehicle to request that a settlement agreement be set aside and that the request to do so was not properly before the court.

**{16}** In response to the motion to dismiss, Plaintiff asserted that her appointment as WDA PR relates back to the filing of the original complaint and that Rule 1-017(A) NMRA allows Plaintiff's substitution as WDA PR because Lance obtained appointment as the probate PR and his failure to obtain a separate appointment as WDA PR was an "honest mistake"; the "wrong" here is not that Lance filed the civil action without obtaining a separate appointment as WDA PR, but that Lance misappropriated the Tyson settlement funds; Plaintiff's substitution was timely; and Defendants were not prejudiced by delay. In reply to the motion to set aside, Plaintiff argued the law has always required a separate court appointment as WDA PR and that Lance's failure to distribute proceeds from an "unauthorized" settlement to the WDA beneficiary qualifies as an "exceptional circumstance" justifying relief under Rule 1-060(B)(6); and that the motion was timely.

**{17}** The district court held a motion hearing on June 27, 2016, at which it stated that the issue presented fell under Rule 1-060(B)(6), and not any other subsection of the rule; "these are extraordinary circumstances" justifying relief under that rule from the dismissal order; and that the motion was brought within a reasonable time. The court also denied Defendants' motion to dismiss, apparently on the ground that relation back to the filing of the original complaint was permitted under Rule 1-017(A) because that complaint gave Defendants notice of the claims against them.

**{18}** On July 26, 2016, the court entered an order granting Plaintiff's motion to set aside the settlement with Dr. Tyson and certifying the order for interlocutory appeal.[5] That order was replaced and superseded by an order entered August 16, 2016, which clarified that the relief sought in Plaintiff's motion "was to set aside the district court's [dismissal order] with prejudice of all claims against John Tyson, M.D., dated May 13, 2013" and ordered reinstatement of the claims against Dr. Tyson. We granted interlocutory review.

---

[5]On August 1, 2016, the district court entered an order "[i]n furtherance of" its July 15, 2015 order that required Teresa's attorney to provide the court and counsel "a status of the distribution of the monies to the Estate of Tawana Lucero Trust Account held and maintained by attorney James C. Ellis[,]" including "an accounting of all funds traceable to" the Tyson settlement. Ellis responded with a letter stating that monies received from the disciplinary board were disbursed to Teresa on August 4, 2015 and that it appeared that "[Lance] had absconded with the [remaining] funds." Ellis also indicated that he had scheduled Lance's deposition for the following week. The process server apparently was unable to serve Lance with the subpoena at that time. The record contains no further information about these issues.

7

**STANDARD OF REVIEW**

**{19}** "We generally review the district court's grant of relief under Rule 1-060(B) for an abuse of discretion except in those instances where the issue is one of pure law." *Kinder Morgan CO2 Co., L.P. v. N.M. Taxation & Revenue Dep't*, 2009-NMCA-019, ¶ 9, 145 N.M. 579, 203 P.3d 110 (alteration, internal quotation marks, and citation omitted). "Such discretion is not a mental discretion to be exercised as one pleases, but is a legal discretion to be exercised in conformity with the law." *State ex rel. King v. B & B Inv. Grp.*, 2014-NMSC-024, ¶ 28, 329 P.3d 658 (internal quotation marks and citation omitted). "An abuse of discretion will be found when the trial court's decision is clearly untenable or contrary to logic and reason." *Id.* (internal quotation marks and citation omitted). Even where we review for an abuse of discretion, we review the court's application of the law to the facts de novo. *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450. A discretionary decision premised on a misapprehension of the law is an abuse of discretion. *Id.*

**DISCUSSION**

**{20}** The question whether the district court properly reinstated the claims against Dr. Tyson turns on the answer to an antecedent controlling question of law—whether, at the time the civil action was filed and the claims against Dr. Tyson were settled and dismissed with prejudice, New Mexico law clearly required an individual who had obtained a court appointment as probate PR to obtain an additional court appointment in order to serve as a WDA PR. Because we answer that question in the negative, it follows that the district court abused its discretion in ordering, under Rule 1-060(B)(6), that the claims against Dr. Tyson be reinstated, and we so hold. We also conclude that the district court erred as a matter of law in ruling that the relief requested in Plaintiff's motion to set aside is properly analyzed under Rule 1-060(B)(6) and that the court abused its discretion in ordering reinstatement of the claims against Dr. Tyson under that rule.

**A.** **The District Court Abused Its Discretion by Basing Its Reinstatement of the Claims Against Dr. Tyson on an Erroneous Interpretation of the Law**

**{21}** The WDA provides that actions under that statute "shall be brought by and in the name of the personal representative of the deceased person[.]" Section 41-2-3. The statutory text contains no requirement that the personal representative of the deceased person must be appointed by the district court for the purpose of bringing an action that asserts a claim for wrongful death, and we may not insert one. *See, e.g.*, *Jones v. Holiday Inn Express*, 2014-NMCA-082, ¶ 19, 331 P.3d 992 (stating that "[c]ourts must construe statutes as they find them and may not amend or change them under the guise of construction." (internal quotation marks and citation omitted)); *Martinez v. Sedillo*, 2005-NMCA-029, ¶ 7, 137 N.M. 103, 107 P.3d 543 ("We will not rewrite a statute."). Rule 1-017(B) does contain an explicit requirement of court appointment for WDA purposes. It provides:

> **B.    Wrongful death actions; personal representative.**   An action for wrongful death brought under Section 41-2-1 . . . shall be brought by the personal representative appointed by the district court for that purpose under Section 41-2-3 . . . . A petition to appoint a personal representative may be brought before the wrongful death action is filed or with the wrongful death action itself.

Rule 1-017(B).

**{22}**    This rule was not adopted until 2014, pursuant to Supreme Court Order No. 14-8300-010, which made it "effective for all cases pending or filed on or after December 31, 2014[.]" Rule 1-017. And no case was pending against Dr. Tyson as of May 13, 2013, as the dismissal order filed that date "dismiss[ed] Plaintiff's [c]omplaint with prejudice pursuant to Rule 1-041(A)(2) NMRA as to Dr. Tyson." For this reason alone, Rule 1-017(B)'s requirement that a WDA PR must be "appointed by the district court for that purpose under Section 41-2-3" does not govern any aspect of this case as to the claims against Dr. Tyson. But there is more.

**{23}**    First, the committee commentary concerning the 2014 amendment reflected in Rule 1-017(B) also makes clear that the requirement that a court-appointed probate PR must obtain a separate court appointment in order to serve as a WDA PR was not clearly mandated by the law existing prior to the amendment's effective date of December 31, 2014. The committee commentary states, "To maintain the distinction between a traditional personal representative and one appointed to maintain a wrongful death action, Paragraph B *now* provides that only a personal representative appointed by the district court may bring a wrongful death action." Rule 1-017(B) comm. cmt. (emphasis added).

**{24}**    Second, even if the Supreme Court order adopting the requirement stated in Rule 1-017(B) was silent as to the rule's effective date, "New Mexico law presumes that statutes and rules apply prospectively absent a clear intention to the contrary." *Howell v. Heim*, 1994-NMSC-103, ¶ 17, 118 N.M. 500, 882 P.2d 541. And it further holds that "[a] statute or rule is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to the date." *Id.* (internal quotation marks and citation omitted).

**{25}**    In our view, this analysis establishes that the law in effect when the civil action was filed, when the claims against Dr. Tyson were settled, and when the complaint was dismissed with prejudice as to Dr. Tyson did not require an individual who had obtained court appointment as personal representative of a decedent's probate estate, as Lance had done, to obtain a separate court appointment as personal representative under the WDA in order to bring and prosecute a WDA claim. Accordingly, the premise of the district court's order reinstating the claims against Dr. Tyson and Plaintiff's argument—that Lance lacked authority to file and settle the claims against Tyson—is erroneous as a matter of law, requiring reversal of the district court's order reinstating the claims against Dr. Tyson.

**{26}** We disagree with Plaintiff's contention that the 2014 amendment adding Paragraph B's district court appointment requirement "codified a statutory requirement" and "simply clarified what both the [WDA] and cases applying and interpreting it have always required." The statute itself says nothing about the need to obtain a court appointment, as discussed above, and if the case law had clearly held that an individual who had obtained court appointment as personal representative of a decedent's probate estate must also obtain a separate court appointment as a WDA PR in order to bring and prosecute a WDA claim, the 2014 amendment to Rule 1-017 would not have been necessary.

**{27}** Several cases involving claims under the WDA predating the 2014 amendment to Rule 1-017 were brought by administrators of the decedent's probate estate, who were treated as proper WDA personal representatives. *See Torres v. Sierra*, 1976-NMCA-064, ¶¶ 16-17, 89 N.M. 441, 553 P.2d 721 (noting that an estate administrator—here a non-resident alien illegally in the United States—"comes within the category of 'personal representative' " for purposes of maintaining a WDA claim); *see also Varney v. Taylor*, 1966-NMSC-080, ¶ 13, 77 N.M. 28, 419 P.2d 234 (stating in a WDA action brought by the administrator of the deceased's estate that "[t]he right of recovery in New Mexico is by the personal representative solely as an agency for the prosecution of the suit"); *Hall v. Stiles*, 1953-NMSC-041, ¶ 7, 57 N.M. 281, 258 P.2d 386 (stating in a WDA action brought by the administrator of the deceased's estate that "actions under the [WDA] may be brought by the personal representative of the deceased person only"); *Henkel v. Hood*, 1945-NMSC-006, ¶¶ 2, 5, 27-28, 49 N.M. 45, 156 P.2d 790 (holding that the "community administrator" of his wife's estate under Texas law was a proper personal representative under the New Mexico WDA).

**{28}** As we have noted, the WDA does not define the term "personal representative." Our Supreme Court explained in *Henkel* that "[i]t is incidental that a [WDA] 'personal representative' (usually defined to be an executor or administrator . . .) is named to bring [the WDA] suit" and that "[i]t is not because this would fall within his duties as such, but because someone must be named and our Legislature has fixed upon such a person as the one to sue." 1945-NMSC-006, ¶ 9. "The term 'personal representative' is used simply to designate the agency, the trustee, the person, who may prosecute this particular character of statutory action[,]" the Court concluded, and "should not be limited so as to exclude special administrators." *Id.* ¶ 12 (internal quotation marks and citation omitted). A person who is "in some sense, a personal representative of the deceased . . . meets the requirement." *Id.* ¶ 13. In a concurring opinion, Justice Bickley stated that "[w]hen the Legislature employed the phrase 'personal representative' [in the WDA] they meant executor or administrator of the estate of the deceased." *Id.* ¶ 31 (Bickley, J., specially concurring).

**{29}** In *Chavez v. Regents of University of New Mexico*, 1985-NMSC-114, ¶ 8, 103 N.M. 606, 711 P.2d 883, our Supreme Court explained that "[i]t is merely incidental that a personal representative is named to bring a wrongful death action" and that "[t]he personal representative is only a nominal party who was selected by the Legislature to act as the statutory trustee for the individual statutory beneficiaries." (Internal quotation marks and

10

citation omitted.) Noting that the WDA does not define "personal representative," the Court recited the Probate Code's definition of "personal representative" as "[a] statutory definition of the term" that "includes an executor, administrator, successor personal representative, special administrator and persons who perform substantially the same function under the law governing their status." *Id.* ¶ 9 (quoting NMSA 1978, § 45-1-201(A)(29) (1983, amended 2011)). The Court also noted *Henkel*'s determination that " 'personal representative' means executor or administrator, and includes a temporary, special, or ancillary administrator[.]" *Chavez*, 1985-NMSC-114, ¶ 10 (internal quotation marks and citation omitted). The *Chavez* Court further explained that "the cases have generally broadly construed who qualifies as a personal representative under the [WDA,]" and concluded that "*a personal representative under the [WDA] may be an estate administrator, as well as an executor or a court-appointed personal representative. Id.* (emphasis added) (citation omitted).

{30} It is certainly true that *Chavez* and other cases pre-dating the 2014 amendment to Rule 1-017 distinguish the duties of personal representatives under the WDA from those of administrators, executors, and personal representatives under the Probate Code. *See Chavez*, 1985-NMSC-114, ¶ 10 (explaining that a WDA PR "need not . . . have the full powers required by the Probate Code, since his duties under the [WDA] are merely to act as a nominal party for all the statutory beneficiaries in order to centralize the claims and prevent multiple and possibly contradictory lawsuits"). But these cases also permitted probate administrators, executors, and personal representatives to serve as personal representatives under the WDA. *See Stang v. Hertz Corp.*, 1970-NMSC-048, ¶ 15, 81 N.M. 348, 467 P.2d 14 (holding that, for "the purposes of the case before us, 'administrator' and 'personal representative' are one and the same" and noting that the plaintiff, "as 'personal representative,' was also ancillary administratrix with the will annexed"); *Torres*, 1976-NMCA-064, ¶¶ 16-17 (holding that a non-resident alien estate administrator "comes within the category of 'personal representative' " authorized to bring a WDA claim); *Stang v. Hertz Corp.*, 1969-NMCA-118, ¶ 38, 81 N.M. 69, 463 P.2d 45 (stating that, "[w]hile the administrator may be the personal representative, there may be a personal representative who is not the administrator"), *aff'd by Stang*, 1970-NMSC-048.

{31} No New Mexico case contains any language even suggesting that an individual who had obtained a court appointment as probate PR must obtain an additional court appointment in order to serve as a WDA PR. *See Dominguez v. Rogers*, 1983-NMCA-135, ¶ 11, 100 N.M. 605, 673 P.2d 1338 (observing, in considering motion to intervene in which appellant sought to be joined with the deceased's mother as a fellow WDA PR, that the "appellant never requested the trial court *or* the probate court to recognize him as a personal representative" (emphasis added)), *superseded by statute on other grounds as stated in Spoon v. Mata*, 2014-NMCA-115, ¶ 23, 338 P.3d 113.

{32} Our decision in *In re Estate of Sumler*, 2003-NMCA-030, 133 N.M. 319, 62 P.3d 776, does not compel a contrary conclusion. In *Sumler*, a five-year-old child and her mother died in an explosion. *Id.* ¶ 3. The mother's half-brother and mother-in-law petitioned the district court for an order appointing them as personal representatives of the minor child's

11

probate estate. *Id.* ¶¶ 5, 6. The child's father objected and filed his own petition to be appointed sole personal representative of the child's probate estate. *Id.* ¶ 6. The district court appointed the father as personal representative, and the father filed a wrongful death action in federal court. *Id.* ¶¶ 6-7. The half-brother and mother-in-law appealed the father's probate appointment. *Id.* ¶ 7.

**{33}** We stated that the case was "nominally an appeal" from the order appointing the father as the personal representative of the child's probate estate and, at its core, concerned "who should control and profit from the action for the child's wrongful death." *Id.* ¶ 2. We observed further that the appellants "sought appointment as the personal representative of [the child's] estate not in order to administer what appears to be an asset-less estate, but because of counsel's belief that a [WDA] personal representative *must* be appointed in accordance with the [P]robate [C]ode." *Id.* ¶ 9 (emphasis added). Citing *Henkel* and *Chavez*, we explained that a WDA PR is merely a nominal party who need not have the full panoply of powers and duties required for a probate PR. *Estate of Sumler*, 2003-NMCA-030, ¶ 8. We did not hold in *Sumler* that a probate PR must obtain a separate court appointment in order to bring and prosecute a WDA claim, but only that the issue of the validity of the probate PR appointment was moot because the decedent's father was already prosecuting the wrongful death claim in the federal court. *Id.* ¶ 11. In any event, this Court has no authority to abrogate or overrule decisions of our Supreme Court.

**{34}** Even if the law in effect when the claims against Dr. Tyson were settled and dismissed with prejudice did require that a probate PR obtain a separate appointment as a WDA PR, the proper remedy for the "honest mistake" of failing to do so would be the ministerial act of appointing the probate PR as WDA PR (or appointing a different person as WDA PR, as the district court did here), effective as of the filing of the original complaint, and ratifying what had happened since, as in *Chavez*, 1985-NMSC-114, ¶¶ 11-20. No principle of law or equity supports the district court's decision to employ a "relation back" theory to Plaintiff's appointment as WDA PR in order to rescue the civil action from the WDA's three-year statute of limitations (repose), *see* § 41-2-2, while refusing to give effect to the settlement resolving the claims against Dr. Tyson on the ground that the probate PR who filed the original complaint within the statute of limitations (Lance) failed to obtain a second appointment as WDA PR.

**{35}** The only justification offered by Plaintiff to support the district court's anomalous decision is that Lance allegedly "absconded with the proceeds of the settlement" and "settled claims he had no authority to settle in contravention of the sole statutory beneficiary's entitlement to the proceeds of that settlement." In other words, relying on Lance's filing of the civil action within the statute of limitations while forcing the settling Dr. Tyson—despite the effectuation of settlement terms and his dismissal with prejudice—back into the case is necessary to vindicate Teresa's claimed rights as WDA beneficiary. We reject this reasoning.

**{36}** There is no dispute that the WDA PR must distribute any recovery under the WDA claim in accordance with the statute's distribution provisions. *See* § 41-2-3; *Spencer v.*

12

*Barber*, 2013-NMSC-010, ¶ 22, 299 P.3d 388 ("[T]he personal representative has a nondiscretionary duty to distribute the wrongful death proceeds in the ratio prescribed by the [WDA]."). But whether Lance breached that obligation is an issue entirely distinct from his failure to obtain a separate court appointment as WDA PR. As noted, the record indicates that some of the Tyson settlement funds were recovered and paid to Teresa. To the extent they were not, Teresa may pursue claims against Lance and/or his attorney(s) in a separate action. *See Leyba v. Whitley*, 1995-NMSC-066, ¶¶ 1-2, 21, 120 N.M. 768, 907 P.2d 172 (concluding that "an attorney handling a wrongful death case owes to the statutory beneficiaries of that action a duty of reasonable care to protect their interest in receiving any proceeds obtained" and upholding the right of a WDA beneficiary to sue the attorneys when the WDA PR misappropriated WDA proceeds obtained from settlement); *see also Spencer*, 2013-NMSC-010, ¶¶ 4, 8, 9, 22 (following *Leyba*); *Spoon*, 2014-NMCA-115, ¶ 29 (stating that WDA PR's failure to comply with statutory duty to ensure that WDA beneficiaries receive a proper allocation of any WDA recovery could potentially expose both WDA PR and her counsel to "significant legal liabilities" and that "a [WDA] beneficiary is not precluded from pursuing traditional tort claims such as misrepresentation, fraud, or collusion"); *Dominguez*, 1983-NMCA 135, ¶ 19 (recognizing that statutory beneficiaries may assert a claim against a WDA PR who fails to properly fulfill his or her statutory responsibilities). Plaintiff cites no case authorizing reinstatement of claims against a party who has settled those claims and, by reason of that settlement, obtained a court order dismissing the claims with prejudice.

**{37}** In sum, the district court abused its discretion by reinstating the claims against Dr. Tyson based on an erroneous interpretation of the law in effect when those claims were settled and dismissed. *See B & B Inv. Grp.*, 2014-NMSC-024, ¶ 28 (stating that the district court's discretion "is not a mental discretion to be exercised as one pleases, but is a legal discretion to be exercised in conformity with the law" (internal quotation marks and citation omitted)); *N.M. Right to Choose/NARAL*, 1999-NMSC-028, ¶ 7 (observing that a discretionary decision premised on a misapprehension of the law is an abuse of discretion).

**B.    The District Court Abused Its Discretion in Ordering Reinstatement of the Claims Against Dr. Tyson Under Rule 1-060(B)(6)**

**{38}** Our determination that the law in effect at the relevant time did not require that a court-appointed probate PR obtain a separate court appointment as a WDA PR obviates the need to analyze the district court's application of Rule 1-060(B). Nevertheless, we briefly address the issue.

**{39}** Rule 1-060(B) provides that "[o]n motion and on such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for" reasons including "mistake, inadvertence, surprise, or excusable neglect" or "any other reason justifying relief from the operation of the judgment[.]" Rule 1-060(B)(1), (6). "The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one (1) year after the judgment, order, or proceeding was entered or

13

taken." Rule 1-060(B)(6).

**{40}** Plaintiff contends that the premise of her motion to set aside is that "the settlement agreement underlying the [dismissal] order was void because [*Lance*] *had made the mistake* of failing to obtain the necessary authority to enter into it." Plaintiff's own characterization places the motion squarely within Rule 1-060(B)(1). Plaintiff's apparent assumption that Rule 1-060(B) applies only to correct judicial error is unfounded. *See Resolution Tr. Corp. v. Ferri*, 1995-NMSC-055, ¶ 8, 120 N.M. 320, 901 P.2d 738 (explaining that the error at issue was based on a mistaken belief about whether note signatories were married properly fell within Rule 1-060(B)(1)). Motions falling within Rule 1-060(B)(1) must be brought "not more than one (1) year after the judgment, order, or proceeding was entered or taken." Rule 1-060(B)(6). The dismissal order was entered May 13, 2013. The motion seeking to set aside that order was not filed until January 25, 2016. Accordingly, the motion was untimely.

**{41}** Motions seeking relief under Rule 1-060(B)(6) need not be brought within a year, but "shall be made within a reasonable time[.]" Our Supreme Court has made clear, however, that Rule 1-060(B)(6) "provides relief only for reasons *other* than those enumerated in [Rule] 1-060(B)(1) through (5)" and that "a party seeking to set aside a default judgment under Rule 1-060(B)(6) must show the existence of exceptional circumstances and reasons for relief other than those set out in Rules 1-060(B)(1) through (5)." *Ferri*, 1995-NMSC-055, ¶ 10 (alteration, internal quotation marks, and citation omitted); *see Wehrle v. Robison*, 1979-NMSC-016, ¶ 8, 92 N.M. 485, 590 P.2d 633 (same). Our Supreme Court "has also made it clear that a party seeking to set aside a judgment cannot claim exceptional circumstances and rely upon [Rule] 1-060(B)(6) in order to circumvent the one-year limit within which to advance grounds set out in [Rule] 1-060(B)(1) through (3)." *Ferri*, 1995-NMSC-055, ¶ 6. It seems plain to us that Plaintiff relies on Rule 1-060(B)(6) for these very same proscribed purposes and that the district court erred as a matter of law in ruling that the issue is properly analyzed under Rule 1-060(B)(6).

**{42}** Leaving aside these problems, which we regard as insurmountable, the only purported "exceptional" circumstance invoked by Plaintiff is Lance's alleged failure to distribute proceeds of the Tyson settlement to Teresa. But there is nothing exceptional in this. Disagreements can and do "arise between the beneficiaries themselves and between the beneficiaries and the personal representative in wrongful death actions regarding the prosecution of the claim." *Spoon*, 2014-NMCA-115, ¶ 22. And, as discussed above, Teresa may assert whatever rights she may have as a WDA beneficiary (to the extent that she is one) by bringing a claim against Lance and/or his attorney(s) based on Lance's breach of the obligation of a WDA PR to a WDA beneficiary.

**{43}** The district court's order granting relief under Rule 1-060(B)(6), moreover, is at odds with the purpose of a rule "designed to apply only to exceptional circumstances, which, in the sound discretion of the trial judge, require an exercise of a reservoir of equitable power to assure that justice is done." *Edens v. Edens*, 2005-NMCA-033, ¶ 24, 137 N.M. 207, 109 P.3d 295 (internal quotation marks and citation omitted). "The [intent] of Rule [1-060(B)]

14

is to carefully balance the competing principles of finality and relief from unjust judgments" and, in performing this task, courts "must consider whether there are any intervening equities that make it inequitable to grant relief." *Phelps Dodge Corp. v. Guerra*, 1978-NMSC-053, ¶ 15, 92 N.M. 47, 582 P.2d 819; *see* Rule 1-060(B) (providing that relief must be "on such terms as are just").

**{44}** It is decidedly inequitable to require Dr. Tyson to bear the burden of being forced back into a case he paid to settle over four years ago based on an asserted need to protect the claimed rights of Teresa, who took no action to protect her rights as a WDA beneficiary until June 12, 2015, despite having known of her daughter's death since early December 2009. The district court abused its discretion in ordering reinstatement of the claims against Dr. Tyson under Rule 1-060(B)(6).

## CONCLUSION

**{45}** The district court's August 16, 2016 order setting aside the May 13, 2013 order dismissing with prejudice all claims against Dr. John Tyson and reinstating Dr. Tyson as a defendant in this case is hereby reversed.

**{46}** **IT IS SO ORDERED.**

 

_____

**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____

**J. MILES HANISEE, Judge**

_____

**JULIE J. VARGAS, Judge**